### *PERRILLAT vs. PUECH.*

APPEAL FROM THE COURT OF THE PARISH AND CITY
OF NEW ORLEANS.

The plea of *res judicata* is not sustained by a judgment of non suit.

An action for the repayment of money obtained under an unlawful agree-ment is not barred by the 3501 article of the Code in relation to *quasi* of-fences.

A contract by which usurious interest is exacted and paid, is in compli-ance with a natural obligation, and cannot be recovered back. Such a con-tract is not *malum in se*, but *malum prohibitum*.

The object of this suit was to compel the defendant to refund money, which the plaintiff alleged he had paid him at an usurious rate of interest. The defendant excepted to the petition, on several grounds which are stated in the opi-nion of the court. The court below sustained one of the exceptions, and the plaintiff appealed.

*Lockett,* for appellant.

*Dennis,* for appellee.

*Porter, J.*, delivered the opinion of the court.

This action is brought to recover from the defendant the sum of twelve hundred and nineteen dollars, which the plaintiff alleges he paid him for money lent at an usurious rate of interest.

The defendant pleaded as exceptions to the action :

1. The authority of the thing judged.

2. The prescription of one year as established by the 3501st and 3503d article of the Louisiana Code, and

3. That the money was paid in compliance with a natural obligation, and could not be recovered back.

The court below sustained the second exception, and the plaintiff appealed.

The first is unsupported by any evidence. The judge below refers to a case between the same parties, once decided in this court. Taking that to be the decision on which the defendant rests his plea of *res judicata*, it, by no means, supports it, for the judgment rendered here was not final, but one of non-suit.—8, *Martin, N. S.* 671.

The plea of *res judicata* is not sustained by a judgment of non-suit.

The judge of the first instance was of opinion that this action was barred by the 3501st article of our code, in relation to *quasi* offences: we are unable to agree with him. The injury complained of in the petition arose out of a contract. ; *Quasi* offences are those by which an injury is done independant of any agreement. The 3503d article relied on, in the answer, provides for cases quite different from the present. The demand here is neither for the arrearages of rent charge, annuities, and alimony, or for the hire of immoveables, or moveables, or for money lent : it is for the repayment of money obtained under an unlawful agreement.

An action for the repayment of money obtained under an unlawful agreement is not barred by the 3501 article of the code in relation to *quasi* offences.

The third exception presents much more difficulty than the others.

The 1751st article of the Louisiana Code, divides natural obligations into four kinds, and under the first head classes those " which are invalid for the want of certain

forms, or for some reason of general policy, but which are not, in themselves, unnatural or unjust.

The 1752d declares that although natural obligations cannot be enforced by an action, yet among their effects one is, that no suit will lie to recover what has been paid, or given in compliance with a natural obligation.

By the 2284th, it is provided, that the payment from which we might have been relieved by an exception that would extinguish the debt, affords ground for claiming restitution.

But the article which follows that just cited, limits this exception to those which would extinguish all natural obligation.

Were it not for the definition given to the natural obligation, in the 1751st article, we should have had great difficulty in deciding this cause. At the time this contract was entered into, the laws of Spain, in force in this State, had not been repealed. By them, contracts, beyond the legal rate of interest, were void. And although one does not readily perceive any difficulty, in saying that if there was no law prohibiting taking interest at a certain rate, the promise to pay it is not only a natural obligation, but one which might be enforced in a court of justice; yet when the law has pronounced a contract null and void, it would seem that an agreement entered into in violation of it, ought not, and could not produce any effect. Pothier, who seems to have had a strong abhorrence of usury, after stating that it is prohibited by both divine and human laws, quotes the maxim of the Roman Code : *Pacta quæ contra leges fiunt, nullam vim habere, indubitati juris est,* and then states that an agreement to pay more than the legal rate of interest, produces no obligation, not even a natural one.—*Pothier, Traité du prêt à usage et du précaire, No.* 111.

Under the present jurisprudence of France, the lender who pays interest which is not due, cannot compel the

repayment, but some think that if the amount is beyond the legal rate, he may.—*Code Nap.* 1906.—In England money paid under usurious contracts can be recovered.—*Douglass' Reports.*

To return, however, to our statutory provisions, by which the case must be decided, they declare that money paid under natural obligations, cannot be recovered; and they define as natural obligations those which are not immoral or unjust, but which may be rendered invalid, from some reason of general policy.

Under which class does the contract, to obtain more than the legal rate of interest, fall? Were we to follow the opinions of Pothier, it would be stamped with turpitude of the grossest kind; but since he wrote we believe different views on this subject pervade the civilized world. Many think that not only it is not immoral to take as high a rate of interest as the lender can obtain, but that it is impolitic to prevent him doing so. Others think differently. But we believe that those who desire to repress the practice are moved more by views of public policy, than a belief that the obligation has no force as a natural one. Indeed the prohibition of the contract by name is an expression of the legislative understanding, that, without such prohibition, it would be binding. Were it one immoral in itself, it would have fallen under the general declaration that contracts contrary to *bonos mores* are void; and special legislation in regard to it was unnecessary. We are of opinion that the prohibition in relation to taking more than a certain rate of interest for money, is founded upon motives of public policy, and not because the contract is immoral. In other words, that it is not *malum in se*, but *malum prohibitum*, and that, therefore, the exception must be sustained.

A contract by which usurious interest is exacted and paid, is in compliance with a natural obligation, and cannot be recovered back. Such a contract is not *malum in se* but *malum prohibitum.*

It is consequently ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed with costs.