## FLOWER vs. MILLAUDON.

EASTERN DIS
*July*, 1841.

Where A gave his own note to B for $11,000 payable in 2 years, and received in payment the note of a third person endorsed by B, for $10,000 payable ten days after his own: *Held*, that it was an agreement to give and receive usurious interest, and null.

An agreement to take even a legal rate of interest on a larger sum than is *really due*, is usurious.

So a contract to make cash advances and to receive ten per cent. interest thereon, and be entitled to one third of the profits of the firm to which the advance was to be made, was held to be usurious.

Accounts which have not been objected to and received by the party, although they contain extravagant charges for commissions and usurious interest, will not be re-opened in a suit for a final settlement and to recover a balance.— Usurious interest once paid cannot be recovered back.

Even where a promissory note is given for a balance of account, in an action between the original parties, the debtor may go into the consideration and contest the account, but the burden of proof is on him, to show affirmatively errors or omissions.

An agreement, proved by the positive testimony of one witness, supported by many strong corroborating circumstances, will control the price of slaves, over the prices they were subsequently sold for at sheriff's sale.

Where a party has made himself liable to creditors by dealing with the firm, although not a partner, and who has paid a partnership debt, will be entitled to recover from the original debtors.

This is an action instituted by Wm. Flower, a partner of the firm of W. & D. Flower, against the defendant, for the settlement of various transactions had with said firm under a special agreement between the parties in 1822, by which said defendant agreed to make advances to the firm and receive one third of its profits. The case has already been before this court, and the general principles governing it, have been settled; but the court being unable to make up and determine on a correct balance, remanded it for another trial. *See 6 La. Rep.* 697.

On the return of the cause to the inferior court, the Parish Judge, after a full investigation of the accounts of the respective parties, gave judgment against the plaintiff: And on the reconventional demand of the defendant, there was judgment

EASTERN DIS. *July*, 1841.

FLOWER *vs.* MILLAUDON.

in his favor over against the plaintiff, for $29,185 47, with interest at ten per cent. on $27,807, 85, from 31st March, 1831, until paid; and legal interest on the balance from 30th June, 1833, until paid.

The plaintiff appealed.

The case was argued in the spring of 1838, and the following opinion pronounced the 4th June following; but a re-hearing was granted.

*Worthington, Watts & Preston,* for the plaintiff and appellant.

*Grymes,* for the defendant.

*Bullard, J.* delivered the opinion of the court.

The second trial of this case resulted in a judgment similar to that which was reversed by this court at a former term, when it was remanded for a new trial. Upon this second appeal the case comes before us with all the evidence adduced by the parties so as to enable us to pronounce finally upon the questions both of law and fact involved in the controversy.

In reviewing the judgment of the Parish Court the most convenient method will be to take up the claims of the plaintiff in reconvention, in the order in which they are recapitulated in his accounts and in the judgment itself.

1st. The balance of W. Flower's loan account amounting on the 21st March, 1831, to $19,930 06.

2d. Balance of all accounts, with W. &. D. Flower, amounting at the same period to $4,480 16.

3d. The balance of W. Flower's commercial account, $3,397 63.

4th. The amount of a judgment rendered against Millaudon in favor of M'Donald et al., for a debt due by the firm of W. & D. Flower, amounting to $1,377 62, and now claimed in reconvention.

The aggregate of these four items forms the sum for which judgment has been rendered in favor of the plaintiff, in recon-

vention, and it now becomes our duty to analyze them in order to ascertain how much of the amount is made up of usurious interest, according to the principles assumed by us in our former judgment, and to what extent the original plaintiff has succeeded in showing errors or omissions in the various accounts between the parties.

I. This first and largest item is made up of a principal of $11,000, with interest at ten per cent. and compound interest from the year 1827. The history of the transaction from its origin, is clearly established by evidence. On the 22d of June, 1822, W. Flower gave his promissory note to Millaudon for $11,000, payable on the 1st of May, 1824. The only consideration for it was a note of V. Nolte & Co., for $10,000, transferred by him to Flower, payable on the 10th of May, 1824, that is to say, a few days after Flower's note would fall due. At the maturity of his note Flower stipulated to pay an interest of ten per cent. on the eleven thousand dollars.

If this latter sum was really and justly due, it is clear the stipulated interest was not above the rate permitted by law. The question therefore, whether the contract was usurious, must depend upon the character of the original exchange of notes; for if the defendant can recover the whole of the principal sum he is entitled to the interest.

The operation was a very simple one. If both notes had been paid at maturity, Millaudon would have gained one thousand dollars without disbursing a dollar. He gave no equivalent but his endorsement on Nolte's note for less than two years and obtained the note of Flower, secured by mortgage on a number of slaves. If instead of Nolte's note he had given the amount of it in money, less the discount at ten per cent., or, about eight thousand dollars, and received at the expiration of two years eleven thousand dollars, it is obvious he would have secured an interest of upwards of eighteen per cent. per annum. Suppose instead of transferring Nolte's note he had given his own, it would have amounted to a loan not of money but of his name, and for the purpose of raising

EASTERN DIS.
July, 1841.

FLOWER
vs.
MILLAUDON.

Where A gave his own note to B for $11,000 payable in 2 years, and received in payment the note of a third person endorsed by B, for $10,000 payable ten days after his own: *Held*, that it was an agreement to give and receive usurious interest, and null.

An agreement to take even a legal rate of interest on a larger sum than is *really* due, is usurious.

So a contract to make cash advances and to receive ten per cent. interest thereon, and be entitled to one third of the profits of the firm to which the advance was to be made, was held to be usurious.

it by discount. That such was the true character of the transaction we are quite satisfied. Under such circumstances if Flower, at the maturity of his note, had contested the payment of it, on the ground of want of consideration as to the amount over ten thousand dollars, which he was to receive ten days afterwards on Nolte's note, would the defence have availed him? We think it would, and that only the principal sum could have been recovered. Nothing would be more easy than to evade the prohibition of usury, if we were to regard only the form of contracts, without any scrutiny into their real nature. An agreement to take even a legal rate of interest on a larger sum than is really due, has been held by this court to be usurious: 3 Martin, N. S. 622.

II. The second branch of the inquiry relates to the accounts between the defendant and W. & D. Flower.

The relations of the defendant with that firm commenced in 1822, under a contract by which the latter engaged to furnish $20,000 in cash and endorsements of their notes of accommodation, for an interest of ten per cent. on the cash part of the advances, and one third of the profits of the concern. We pronounced our opinion on a former occasion, that such a contract was usurious. We have heard, as argument to convince us that we were in error even on the hypothesis assumed by the parish judge on the last trial, that the interest applied exclusively to the cash advance, and the profits were intended as commissions for endorsing. In point of fact ten thousand dollars upon which the interest is charged, were not advanced at first in cash. Millaudon, it appears from the receipt given at the time, loaned them in cash one thousand dollars, gave his notes at sixty days for six thousand five hundred dollars and his endorsement on their note for twelve thousand five hundred dollars, amounting together as the receipt expresses it "to the sum of $20,000, which loan is granted to us on the condition as per our agreement entered into this day with the said L. Millaudon." Admitting that the defendant's notes at sixty days were equivalent to cash, yet the money part of the

advance falls short two thousand five hundred dollars, of the

sum promised; and yet the interest is charged on ten thousand, besides profits on the first year's commercial operations.

In pronouncing on this part of the case, upon the first appeal, we neither intended, it is true, to direct the judge *a quo* what judgment he should render upon the new trial, nor to preclude a review of our own opinion, when all the evidence in the power of the parties should be before us, and after listening to all the arguments they might think proper to urge. Our examination of this point has brought us again to the conclusion, that so far as the defendant seeks, in this case, to recover the interest and profits under that contract, he cannot succeed. But whatever interest or profits may have been paid or are considered as paid, by the appropriation of funds in the hands of the defendant, with the assent of the plaintiff, cannot be recovered back by the plaintiff; 3 Martin, N. S. 622 ; 2 La. Rep., 431 ; 4 Idem, 544.

According to these principles the accounts between the parties, (some of them rendered by W. & D. Flower themselves,) up to the 10th November, 1823, when a balance appears to have been paid in cash, must be considered as settled and are not liable to be opened for the purpose of inquiring into the discount of the notes of Shaw and Rogers, and others, together with charges for commissions and insurance, of which much was said in the argument. If we were now to permit the opening of those accounts we should, in substance, permit the parties to recover back the discount voluntarily submitted to and paid, after the transaction had been finally closed. With respect to many items of commission charged in subsequent accounts, it may be remarked, that although those charges appear in some cases extravagant, yet the parties with whom they were transacted and who were legally capable of assenting to them, never having made any objection, although parties to this record, we are of opinion the accounts cannot be opened for the purpose of reducing them. But the charges for interest on the loan to the firm, and of profits on the commercial oper-

*Accounts which have not been objected to and received by the party, although they contain extravagant charges for commissions and usurious interest, will not be reopened in a suit for a final settlement and to recover a balance. Usurious interest once paid cannot be recovered back.*

EASTERN DIS. ations, after the period at which an account appears to have
July, 1841. been settled and the balance paid, must be rejected.

FLOWER
vs.
MILLAUDON.

From the date above mentioned, up to the dissolution of the partnership of W. & D. Flower, in July, 1825, it does not appear that any final settlement took place.

Even where a promissory note is given for a balance of account, in an action between the original parties, the debtor may go into the consideration and contest the account, but the burden of proof is on him, to show affirmatively errors or omissions.

On the 15th of March, 1827, W. Flower, the present plaintiff, approved an account furnished by the defendant embracing various transactions, and being in fact a continuation of accounts with W. & D. Flower. He seeks now to open that account with a view to show errors to the prejudice of the firm and himself. Even if he had given his promissory note for the balance, it is clear he might, in an action between the original parties, go into the consideration and contest the account. But the burden of proof is on him. It is for him to show affirmatively errors or omissions, and the presumption is in favor of the account as approved.

Among other items complained of is a re-draft of Le Roy, Bayard & Co. on Millaudon, on account of a transaction of W. & D. Flower, embracing $406 78, commissions and interest charged by that firm. Millaudon had furnished his bill of exchange on the house in New York, at four months, for $4,040 under an agreement to receive commissions at five per cent. for his responsibility, and W. & D. Flower agreed that Le Roy, Bayard & Co. might re-draw for the amount, with the addition of exchange, interest and commissions. It now appears in proof that there never was such re-draft, but that the first bill was paid at maturity and charged to Millaudon in his account current with Le Roy, Bayard & Co. That item therefore, except the five per cent. commissions, must be rejected. The amount of the original bill together with commissions is charged by the defendant.

III. We proceed to the third branch of the subject, to wit: the account between W. Flower and the defendant, which exhibits a balance against the former of $3,397 63.

After the dissolution of the partnership it appears that the defendant continued to act as the factor of the plaintiff, sold

his crops and made the usual advances. The most important item in this last series of accounts, which has been much contested, is that which credits W. Flower with the price of certain slaves sold in pursuance of an order of seizure under a mortgage given to secure the amounts due to Millaudon, on account of the transactions which we have previously mentioned. It is contended by the appellant that he is entitled to a much larger credit on that account; that Millaudon agreed to take the slaves at a much higher price, and that the sale by the sheriff was resorted to by mutual consent, with a view to cut off other mortgages of a subsequent date.

In support of these allegations he produces the testimony of one witness who deposes that the slaves in question, about twenty-six in number, were brought to New Orleans by W. Flower to be sold for the purpose of paying Mr. Millaudon; that the witness arrived here a few days afterwards, and on the return of W. Flower to Feliciana, he was charged with the negociation. That Millaudon finally agreed to take the gang at $11,600; they were thereupon sent up to his plantation. In corroboration of this statement it is proved that on the return of W. Flower to this city, the parties went before a notary to pass a sale, but that it was not done in consequence of a suggestion of the notary that the safest course for the purchaser would be to have a judicial sale, in order to cut off other incumbrances. The notary testifies that a memorandum was exhibited by the parties partly in the hand-writing of each, but that they went away and soon afterwards he learned the sale by the sheriff.

It is further proved by the captain of the steamboat on board of which the negroes were conveyed to the plantation of Mr. Millaudon, that he stated he had purchased them, and nothing was charged for their passage because Mr. Millaudon was a part owner of the boat. He called them his negroes; and David Flower, who testifies to the bargain and delivery, accompanied the slaves and Mr. Millaudon to the plantation. They were afterwards brought back to the city to be sold by the she-

riff.  It is further shown that the proceeding by order of seizure and sale was with the consent of Flower, and that he dispens- ed with any appraisement; and the sheriff testifies that the sale had the appearance of an amicable arrangement between the parties; and the impression on his mind was that the valuation of the slaves made by the parties must have been a different one from that ascertained by the sheriff's sale.

An agree- ment, proved by the positive testimony of one witness, supported by many strong corroborating circumstances, will control the price of slaves, over the prices they were sub- sequently sold for at sheriff's sale.

The positive testimony of one witness supported by so many strong corroborating circumstances : such as the acknowledg- ment of the defendant himself that he had purchased the slaves ; their delivery to him at his plantation ; the conduct of the parties at the office of the notary and at the sale by the sheriff; force conviction upon our minds that the agreement alleged by the plaintiff did exist, and that the subsequent sale by the sheriff was understood by the parties at the time as merely the means by which an unincumbered title could be conveyed.  It is impossible to account for the conduct of both parties upon any other hypothesis.  Neither party has chosen to resort to the conscience of his adversary touching this trans- action, and that appears to us the only means by which it could be satisfactorily shown that the original agreement had been cancelled.  We cannot concur therefore with the Parish Court in its conclusion, and are of opinion that the plaintiff is entitled to the credit claimed by him, less the expenses of the sale.

The note for $733 33, which is objected to, is now shown clearly to have been given for a few months interest on the loan of $11,000, and must therefore be rejected ; but we think the objection to the discount on the notes for $9500, according to the principles heretofore assumed by us, ought not to be sus- tained.

Independently of the interest account and after making all the allowances to which we think the parties entitled, we have reached the conclusion that under the three first heads there is due to the plaintiff in reconvention a balance of $4633 46, which he is entitled to recover, independently of the judgment

EASTERN DIS.
July, 1841.

FLOWER
vs.
MILLAUDON.

against him in favor of a creditor of the firm, which we shall next proceed to examine. The above balance being made up of advances and secured by the mortgage which the plaintiff seeks to annul, for a specific sum, we think that interest at five per cent. should be allowed from judicial demand, that is, from the filing of the demand in reconvention.

IV. We now proceed to consider the last question presented by this case, to wit: the right of the defendant to recover of W. Flower the amount of a judgment rendered against and paid by him in favor of a creditor of W. & D. Flower.

It appears that in consequence of the arrangement between the defendant and the parties to the contract, under which advances were made to the new house of W. & D. Flower, on a stipulated participation in the profits of the concern, it was considered by this court that Millaudon had made himself liable to third persons dealing with the firm, and the judgment in question was recovered. At the inception of the present suit one of the avowed objects of the plaintiff was to hold the defendant liable to him for losses sustained in that concern, and to apply the principle thus settled to his own case as a third person or stranger to the partnership. On a former appeal to this court these pretensions of the plaintiff were considered and we held " that Millaudon could not be regarded as a partner as it relates to the plaintiff, whatever his liabilities might be towards third persons." We further intimated our opinion that although William Flower was entitled to no profits *eo nomine*, but only an annual interest on the capital owned by him in the former concern, and which might be recovered by the new, yet we considered him to be a partner in the new house. It is now contended by his counsel that he was only nominally or ostensibly a partner; that he was entitled to no profits and took no active part in the concern, and that therefore he is not liable for any debts of the new concern in relation to Millaudon, who was perfectly well acquainted with his position, and the authority of Gow and Collyer on Partnerships is relied on ; Gow, 27, 91, 32; Collyer, 43.

The doctrine as laid down by those authors appears to be just and equitable, but its application to the case before us is not so clear. If both parties were merely ostensible partners in a commercial firm, each without any real interest as partners, it is difficult to perceive how one could have any recourse upon the other. Supposed to be acquainted each with the other's true character in relation to the partnership, neither could allege any implied promise on the part of the other to indemnify him for any liability he might incur towards third persons. But the present case presents other features and requires the application of other principles. The advances by Millaudon were to be made in the first instance to a firm of which the plaintiff was not only a partner but most deeply interested. It is true his principal object in connecting himself with the new concern was the liquidation of the old. But he bound himself personally for the reimbursement of the advances to be made by Millaudon during the whole time the partnership was to continue. It is therefore clear that if the latter had advanced the amount due to the creditor with the assent of the acting partners, instead of resisting a suit, he would have been entitled to recover against the present plaintiff under the contract. It is equally manifest that the creditor of the firm could have recovered against Flower. If a loss must fall on one or other of the parties, it appears to us equitable that it should ultimately rest upon him for whose interest and under whose guarantee the original liability was incurred.

*Where a party has made himself liable to creditors by dealing with the firm, altho' not a partner, and who has paid a partnership debt, will be entitled to recover from the original debtors.*

For these reasons we concur with the court below in the conclusion that the plaintiff in reconvention is entitled to recover the amount of the judgment in question in addition to the sum above expressed.

It is therefore ordered, adjudged and decreed that the judgment of the Parish Court be avoided and reversed; and proceeding to render such a judgment as should, in our opinion, have been given below, it is further ordered and decreed that the defendant as plaintiff in reconvention recover of William Flower the sum of six thousand and eleven dollars and eight

cents, with interest at five per cent. upon four thousand six
hundred and thirty-three dollars and forty-six cents thereof,
from the date of judicial demand, to wit: April 4th, 1831, and
with a like interest upon one thousand three hundred and se-
venty-seven dollars and sixty-two cents from the second day of
April, 1836, together with the costs of the Parish Court; those
of the appeal to be paid by the appellee.