LAND, J.
The allegations of plaintiff’s petition may be stated as follows:
In the year 1904, the defendant was one of three stockholders of the Trellue Lumber Company and of the Cypress Tank & Manufacturing Company of Patterson, La., and plaintiff was employed as bookkeeper for said •corporations.
That about May 1, 1904, defendant, being .obliged to leave Patterson on account of the bad health of his wife, employed the plaintiff ,to represent him in the management of the business of said corporations, and gave plaintiff a power of attorney. The plaintiff did represent defendant faithfully and to his .great benefit and advantage, and defendant agreed to make plaintiff’s salary thoroughly satisfactory.
That while defendant was away he decided to sell his interest in said corporations and also his interest in the mercantile firm of J. P. Muggah & Co., and requested plaintiff to represent him in the sale of the same. That defendant on his return in December, 1904, not being on amicable terms with his fellow stockholders and partners, and therefore unable to discuss with them matters pertaining to said sale, employed the plaintiff to .act and speak for him, defendant agreeing at the time to pay plaintiff the sum of $2,500, provided he got out of the business without legal proceedings, which amount the defendant agreed to invest with and on the same basis as he did his own money in the pine business, into which he contemplated going, further agreeing to arrange a loan to plaintiff so that he should invest in said business with defendant not less than $5,000.
That such sale not having taken place up to February 13, 1905, defendant became impatient, and wanted to offer all his holdings for $50,000 for a 'limited number of days, and, in case of failure to do so, to institute legal proceedings to dissolve the corporations.
That plaintiff dissuaded defendant from so doing, and requested further time in which to try and effect an amicable sale. That defendant agreed to this, if the plaintiff would take the matter entirely in hand and not bother him with the details of the transaction, and stated that the former proposition of $2,500 as a remuneration for plaintiff’s services would hold good, provided that the defendant receive $60,000 or more for his interest- in the two corporations and partnership. That defendant on the following day caused a power of attorney to be drawn up, which was afterwards verbally extended until the day of sale.
That plaintiff served defendant faithfully until the day of sale on April 19, 1905, and the defendant received more than $60,000 for his interest in the Patterson properties.
That after the sale the plaintiff took three different trips to the Mississippi Coast, at the request of the defendant, in an effort to assist him in locating and purchasing a pine “proposition” to suit him, the greater portion of the expenses of said trips being borne by the plaintiff.
That in July, 1905, the defendant left Patterson to be gone for some months, and plain *103 tiff, being in need of funds, wrote the defendant, “requesting him to send a settlement or check for what was convenient”; and that defendant in response wired the Bank of Patterson to pay plaintiff $200, which was accepted on account.
That after said sale, plaintiff was about to accept a position in a sawmill in Jeanerette, but defendant followed him there and persuaded him not to accept the position, stating that he was about to purchase another sawmill and lands, and that he desired plaintiff to await such purchase and go into business with him, that he would see that plaintiff had a handsome interest in that business, and that the amount owed plaintiff would be given him as stock, and that defendant would assist plaintiff in obtaining a loan, which, with the amount already due, would give him an interest of some $5,000 in the new business.
That plaintiff relied on these promises, and refused other overtures for positions; that defendant finally purchased a sawmill and timber lands at Inda, Miss.; that plaintiff worked for defendant, opening his books and straightening out his business at the new mill, but that defendant refused to carry out his promise to sell plaintiff an interest in the business at Inda or to pay the amount due for his services.
Plaintiff also sues for $78.70, alleged balance of profits due him as a partner on a deal in shingles.
The petition finally alleges:
“That said services to Guytker, leaving out of account the expenses petitioner has incurred for him, are well worth the sum of $2,378.70, and that petitioner should have judgment for that amount.”
Defendant excepted to the petition as too vague and indefinite to allow an answer thereto, in that it was not possible to determine from the allegations of the petition whether the plaintiff was seeking to recover on a contract or a quantum meruit.
Defendant also excepted to the plaintiff's-demand for one-half of the profits alleged to have accrued from the partnership venture-referred to in the petition, on the ground-that the only remedy was by direct action' for a settlement of the affairs of the partnership.
These exceptions were overruled, and defendant excepted. On the trial the defendant objected on the same grounds to all evidence offered to prove the allegations of the' petition. These objections were overruled,- and defendant excepted. On the trial the defendant objected to evidence to show the' value of the services set forth in the petition. These objections were overruled, and witnesses were allowed to testify to such-value. Defendant excepted.
Judgment was rendered in favor of plaintiff for the full amounts sued for, to wit, $2,300 for services, and $78.70 for profits. Defendant has appealed.
The allegations of the petition show that the plaintiff sues on a special contract for services rendered. The subsequent allegation of the value of such services does not change the nature of the action.
In Gourjon v. Cucullu, 4 La. 117, the court held that an agreement for the price of services does not preclude evidence of their value. In Gribble v. McKleroy and Bradford, 14 La. Ann. 806, the court said:
“Nor did the judge err in receiving evidence of the value of the services; for it has been, held in several cases that, if the plaintiff sues for services on a special contract, he may give evidence of their value. See the case of Gourjon v. Cucullu, 4 La. 117.
“If a party can prove a fact on the trial of his cause, he may certainly allege it in his petition.”
Hence the allegation of value in the petition does not imply that the plaintiff is suing on a quantum meruit.
The exception as to the demand for profits in the alleged partnership transaction is without merit, as it appears to have been a *105 single venture, completed and leaving a net profit in the hands of the defendant.
We are of opinion that the exceptions were properly overruled.
The answer of the defendant, after pleading the general issue, admits that the defendant agreed to pay plaintiff some compensation for the extra work imposed on him by defendant’s absence from his business for :six months, but avers that such compensation was paid by a raise of $25 per month in plaintiff’s salary, and by the payment of .$200 in July, 1905, in full settlement of the •claim. The answer denies that defendant ■ever employed plaintiff to sell his interest in the corporations and partnership, and .avers that the power of attorney referred to in the petition was never delivered to the plaintiff. Defendant, for further answer, denies that he ever agreed to pay plaintiff .$2,500 or any other sum with reference to the sale of his properties, and he denies that he received $60,000 from such sale.
Defendant, for further answer, admits that the partnership venture yielded a net profit of $59.46, and that plaintiff is entitled to one-half of said amount, but avers that said one-half has been tendered to the plaintiff and deposited in bank for his ac•count.
Defendant' was absent from Patterson about six months in 1905. Plaintiff had a power of attorney to represent him as a •stockholder and director. Plaintiff also represented the defendant in the matter of the ■sale of his interest in the properties. The testimony of the plaintiff on this point is corroborated by defendant’s letter of November 3, 1905, written at Los Angeles, Cal., from which we excerpt the following passages :
“Tour plan of eliminating the book accounts &c. and selling only the mills, lands, lumber .on hand, is a good one, and I don’t see why it should hang fire, and I hope that there wili be some results from your efforts. * * * And while we are on this subject I want to say that, if you can make a deal that will bring me a fair return, I will try to do the handsome handout for you when the thing is settled up. At all events, if I succeed in getting out, and have coin enough to start some other business, I shall want' you with me, so don’t get tied up with the new concern too quick.” '
Defendant returned to Patterson in December, 1904, and then, according to plaintiff’s testimony, made the first agreement recited in the petition. The contemplated deal fell through, and subsequently the two co-stockholders of the defendant sold their stock to R. L. Riggs. Whereupon, according to plaintiff’s testimony, the defendant made the second agreement referred to in the petition. It appears that on February 14, 1905, the defendant executed a notarial power of attorney authorizing the plaintiff to sell and transfer, at such prices as he might deem proper, all his stock in the corporations and all of his interest in the partnership. The notary, a brother of the plaintiff, remarking on the broad and sweeping character of the mandate, said that plaintiff ought to feel flattered, and that defendant trusted plaintiff further than he would. Defendant replied that:
“Mr. O’Niell was all right, and if he stuck to him in this matter he would fix him up in the world.”
As to the power of attorney, the evidence shows its delivery to plaintiff. Mr. Riggs saw it in plaintiff’s possession, and several witnesses testified that defendant told them that plaintiff had authority to represent him in the matter of the sale.
The situation was peculiar. The defendant was sick of the business. He wished to sell out, but his associates were not willing to buy his interest or to sell the property. Defendant went to California, leaving plaintiff as his representative to effect a sale, if possible. Plaintiff advised against selling the accounts, and they were reserved from all the subsequent negotiations. One deal fell through, but finally the two associates *107 of the defendant gave Mr. Riggs an option on their stock, and later the defendant sold his third interest to the same purchasers. The value of plaintiff’s services consisted in inducing the associates to sell their interest in all the properties, and in assisting the sale of defendant’s interest in the same. The defendant realized over $60,000 from the sale of his interest. Plaintiff, according to Riggs’ testimony, was a large factor in bringing about the sale of the interests of Muggah and Trellue, which paved the way to the sale of the defendant’s interest in the same properties. Mr. Riggs on cross-examination stated that under similar circumstances he would expect to pay his own bookkeeper a commission of 5 per cent. Mr. Davis of the same company, testified to the same effect.
Plaintiff represented defendant for six months while he was absent from Patterson, and looked after his interest in the three concerns, besides discharging his duties as bookkeeper. The promises of handsome compensation and of fixing him up in life were made with reference to the sale of defendant’s interest in the properties, and not for the mere management of the ordinary affairs of the concern.
In July 1905, plaintiff wrote to defendant:
“Would appreciate very much if you would send me a check for the work at the office while you were away and for attending to the matters pertaining to the sale of the T. ,L. Co. and C. T. & M. Co. Everything has been going out for the past six months, and nothing coming in, and I would not like to start out running short.”
Defendant wired the Patterson' Bank to pay plaintiff $200, but made no other reply.
In December, 1905, plaintiff went to Inda, Miss., to keep books for the defendant, and stated to his representative that he had a claim against the defendant for $2,500. Plaintiff served as bookkeeper for about 60 days, and then resigned. Plaintiff was offered $5,000 of stock at 50 or 60 cents per dollar of par value, to be paid out of his salary and dividends. Plaintiff declined to take the stock. When the manager mentioned to the defendant that plaintiff had a claim of $2,500 against him, he seemed surprised, and said that it was the first time he ever heard of it. This is the gist of the manager’s testimony.
Plaintiff testified that, after having several unsatisfactory interviews with the defendant, the latter in December, 1905, or January, 1906, offered him $1,200 in lieu of the stock promised. Plaintiff declined this offer.
Defendant’s version of this offer is that plaintiff complained that defendant had caused him to lose $1,200 by keeping him from-accepting employment elsewhere, and that defendant replied that, if plaintiff thought that, he would give him that amount rather than to have him say that defendant was-the cause of the loss.
Defendant’s testimony is in effect that he considered $200 paid to plaintiff in July, 1905, was in full settlement of all extra services rendered in defendant’s behalf, and that the only additional understanding was that defendant would give plaintiff employment and sell him $5,000 worth of stock at 50 or 60 cents on the dollar, to be paid for out of the dividends.
The decided preponderance of the evidence-shows that defendant employed plaintiff to bring about a favorable sale of defendant’s interest in the three properties at Patterson, and promised him handsome remuneration, and that the plaintiff was instrumental in bringing about the sale made in April, 1905. In fact, the power of attorney proves the employment of plaintiff to sell the properties on such terms as he might deem best. The testimony of the plaintiff and of the notary shows that the plaintiff as agent was to receive a liberal compensation for his services. The trial judge gave credit to plaintiff’s testimony as to the price to be paid.
*109 The principal contention by defendant’s counsel is that the evidence of plaintiff is insufficient to establish a contract for more than $500, because the law requires such an obligation to be “proved at least by one credible witness and other corroborative circumstances.” Civ. Code, art. 2277. It is further argued that the fact that a witness is a party in interest, such as plaintiff or defendant, may diminish the extent of his credibility. Civ. Code, art. 2282. “The testimony of one witness however credible is, per se, insufficient to prove a contract when the value exceeds five hundred dollars.” Lazarus v. Friedrichs, 117 La. 714, 42 South. 230.
The question in this case is whether the evidence shows other “corroborative circumstances.” To hold that such circumstances should be specific enough- to cover the very terms of the parol contract would be tantamount to requiring the testimony of two witnesses.
In Flower v. Millaudon, 19 La. 192, it was held that a parol contract to take slaves at $11,600 was sufficiently proven by the testimony of one witness and circumstances tending to show that the slaves were taken under an agreement and not by virtue of a subsequent judicial sale at a lower price.
In Succession of Piffet, 37 La. Ann. 871, a physician claimed a fee of $2,000 for services to the deceased under a special verbal contract. The corroborating circumstances were that the patient was old and rich, and ardently wished for time and strength to dispose of her property, and that the physician gave up his other practice and devoted himself exclusively to the patient. Evidence was also adduced to prove that the services were worth the sum claimed. The court held that such evidence was admissible for the purpose of proving that the contract was one likely to be made under such circumstances and was reasonable in itself, and that the corroborating circumstances Were sufficient to support the testimony of the physician as to the verbal contract.
In the case at bar there are a number of corroborating circumstances which support the testimony of the plaintiff that he was employed and rendered services of value under a verbal contract.
The question is therefore one of credibility, and not of sufficiency. The trial judge gave credit to the testimony of the plaintiff.
The contention that the interest of pliintiff in the properties did not sell for $60,000 as provided in the alleged verbal contract, is without merit, since the price plus the reserved accounts realized about $62,000.
As.to the profits of the partnership venture, there is no evidence in the record except the admission of defendant that plaintiff’s share amounts to $29.73.
It is therefore ordered that the judgment below be reduced to $2,329.73, and, as thus amended, be affirmed; plaintiff to' pay costs of appeal.