329 So.2d 919 (1976)
FIRST NATIONAL BANK OF RUSTON, Plaintiff-Appellee,
v.
John M. MILLER et ux., Defendants-Appellees Third Party Plaintiffs-Appellees,
BARRON MOBILE HOMES, INC., Third Party Defendant-Appellant.
No. 12869.
Court of Appeal of Louisiana, Second Circuit.
March 15, 1976.
Rehearing Denied April 19, 1976.
Writ Refused June 11, 1976.
*920 Holloway, Baker, Culpepper & Brunson by Joseph A. Cusimano, Jr., Farmerville, for third party defendant-appellant.
Rabun & Post by Armand F. Rabun, Farmerville, for third party plaintiffs-appellees.
Barham, Adkins & Coleman by Ronald G. Coleman, Ruston, for plaintiff-appellee.
Before PRICE, SMITH and MARVIN, JJ.
En Banc. Rehearing Denied April 19, 1976.
PRICE, Judge.
First National Bank of Ruston brought this suit against John M. Miller and his *921 wife, Florece Miller, seeking judgment for the balance due on a promissory note secured by a chattel mortgage on a mobile home.
Defendants purchased the subject mobile home from Barron Mobile Homes, Inc., on December 11, 1972, and executed a note secured by chattel mortgage in the amount of $18,977.76 payable to Barron for the credit portion of the purchase price together with finance charges and insurance costs. The note was transferred immediately by endorsement without recourse to the plaintiff Bank.
In answer and reconventional demand, defendants deny the Bank is a holder in due course of the note and allege it is subject to all defenses which they have against the vendor, Barron Mobile Homes, Inc.
In a third party demand against Barron, defendants assert the mobile home sold to them contained inherent defects which rendered it useless for the purpose for which it was intended and that the sale should be rescinded. Under their position that the Bank is not a holder in due course, defendants primarily contend the note should be canceled and all payments previously made on it refunded unto them. Alternatively, they contend that should the Bank be found to be a holder in due course, then they should have judgment against Barron for whatever amount they are found liable to the Bank together with the sum of $2,372.22 previously paid on the note. Defendants also ask for judgment for the sum of $1,000 representing the trade in allowance of a trailer previously owned by them and the sum of $500 as damages for loss of time expended in connection with attempts to have the defects corrected.
After trial on the merits, the district court rendered judgment in favor of the Bank and against defendants on the principal demand for the balance owed on the note of $16,488.75, together with legal interest and attorney fees provided in the note. Defendants were awarded judgment under the third party demand against Barron decreeing a rescission of the sale and ordering a return of the purchase price subject to a credit of $2,625 for a fair rental value for the time defendants occupied the unit.[1]
Barron perfected this appeal from the judgment against it on the third party demand specifying the following:
1. That an exception of prescription of one year for an action in redhibition should have been sustained.
2. That the trial court was in error in finding the mobile home contained redhibitory defects.
3. That it should not have been taxed with one-half the costs of the suit as was provided in the trial court's judgment.
Defendants answered the appeal asking that the judgment in their favor on the third party demand be modified to provide that the purchase price ordered to be refunded to them be increased to the sum of $19,977.76, together with legal interest on $16,488.75 of this amount from November 12, 1974, until paid and for 15% of this amount plus interest as attorney fees. Also they request the credit for the fair rental value be reduced to the sum of $1,312.50, and that the judgment award them all court costs taxed against them in the principal demand.
The judgment in favor of the Bank is not before us on this appeal.
We shall first discuss the specifications of error made by third party defendant, Barron.
The exception of prescription is based on the provisions of Louisiana Civil Code Article 2534 which provides that a redhibitory action must be instituted within *922 a year of the sale unless the seller is in bad faith. It is now well settled that in circumstances where the seller has made continued attempts to repair the defects, prescription does not begin to accrue until the seller has abandoned all such attempts to repair. de la Houssaye v. Star Chrysler, 284 So.2d 63 (La.App. 4th Cir. 1973); Domingue v. Whirlpool Corporation, 303 So.2d 813 (La.App. 3rd Cir. 1974). The trial judge found that repeated attempts had been made by Barron to repair defects to within a year prior to the filing of this suit and that the exception is not well founded. From our examination of the evidence, we conclude the trial judge was correct in overruling the exception.
In Rey v. Cuccia, 298 So.2d 840 (La.1974), the Supreme Court summarized the law pertaining to the rescission of a sale because of a redhibitory vice as follows:
"In Louisiana sales, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product's intended use. Civil Code Articles 2475, 2476, 2520.... A redhibitory defect entitling the buyer to annul the sale is some defect in the manufacture or design of a thing sold `which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.' Article 2520. Upon proof of such a defect, the buyer is entitled to annul the sale and recover the purchase price, rather than being limited to recovering the cost of curing any such substantial defects . . . The buyer must prove the defect existed before the sale was made to him. Article 2530. However, if he proves that the product purchased is not reasonably fit for its intended use, it is sufficient that he prove that the object is thus defective, without his being required to prove the exact or underlying cause for its malfunction. . . The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale . . .
"If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale. . . if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale."
The operative facts underlying defendants' action to rescind the sale for redhibitory vices and the evidence presented by them in support of their allegations are concisely stated in the trial judge's reasons for judgment as follows:
The Millers purchased the mobile home involved in this action from Barron Mobile Homes, Inc. (referred to hereinafter as "Barron") in November, 1972. The vendor moved the trailer out to a site selected by the purchaser and set it up. Defendants moved into the mobile home in December, 1972. Their testimony at the trial consisted largely of a catalogue of complaints allegedly registered with "Barron" during the entire period of their residence in the mobile home. When the first rain came, on their second or third day in the trailer, the roof leaked in an area between the living room and the dining room. Thereafter the roof leaked whenever it rained, despite efforts of "Barron's" repairman to remedy this defect. On one of these occasions, after defendants had been living in the mobile home some three or four months, the leak was so bad that the clothes hanging in their closet got wet. On another occasion defendants had a carpet ruined by the water coming in through the roof. They insisted that the roof was still leaking when they vacated the mobile home in August, 1974.
*923 Defendants' second major complaint involved the charge that the entire electrical system in the mobile home was defective. They moved into the trailer during the winter and immediately turned on the heating unit. The unit would not cut off automatically as it was supposed to, and only heated one side of the mobile home. "Barron" never properly repaired this defect. According to Miller, "when I moved out the fan would come on and blow and cool the trailer off in the winter-time and after it got freezing cold the heat would come on. Then the heat would go off and the fan would keep blowing." Defendants constantly had trouble with wall sockets or plugs burning out and several appliances were ruined because of low voltage. The electrical outlet in the bathroom would not work and the vacuum cleaner would not turn on when plugged into certain outlets. Fire would regularly "pop out" of the wall plugs. Miller related that "when it was wet and rained and you were on the outside you had to holler for somebody inside to open the door because if you caught hold of it on the outside it would knock you off the steps." Jerry Watson, a neighbor of defendants, testified that he went down to their mobile home in the summer of 1973 and at that time there was fire coming from one of their wall receptacles.
John R. Lenard, an electrical contractor from West Monroe, Louisiana, who had been in the electrical business for 23 years, checked the electrical system in the mobile home on August 9, 1974, at Miller's request. Lenard stated that he checked the entire electrical system in the trailer, examining the main circuits, the main box and all wiring that could be checked. It was his opinion that the main power box in the mobile home was too small and that the circuits were dangerously overloaded. He warned that this condition could easily cause a wire to overheat and burn. He found that all of the wiring had loose connections. Half of the electrical receptacles that he checked did not work. The heating unit was improperly connected and tended to "short out". It was Lenard's opinion that the entire electrical system would have to be redone in order to correct this defect. He testified that these electrical defects would not have been apparent to the purchaser of the trailer.
The defendants also experienced problems with the plumbing in the mobile home. The precise complaint was that "you turn on the hydrant and you get water out around the knob where you turn it on and then the bathtub, when you let the water out, water would go all over everywhere, run out from under the bathtub." They claimed that "Barron" was also informed of this defect but never corrected it.
The trial judge found that the preponderance of the evidence established these defects existed and that defendants had made repeated demands on Barron or its employees to repair the defects and that although some attempts had been made, they had proven unsuccessful.
The trial judge's findings of fact and conclusions of law based on these findings are as follows:
From the evidence adduced upon the trial of this matter it is clear that the third party plaintiffs have proved by a preponderance of the evidence that the mobile home they purchased from "Barron" had substantial vices and defects, consisting primarily of a leaking roof and faulty electrical system, which rendered the use of the trailer so inconvenient and imperfect that it must be supposed that the Millers would not have purchased it had they known of the vices. Clearly the mobile home was unfit for the purpose for which it was purchased in view of the fire hazard posed by the defective electrical wiring. The purchasers were not required to prove the exact underlying cause *924 for any of the defects. Although the defects might have appeared more than three days after the sale of the mobile home, they did appear soon after the Millers moved into the trailer. Since "Barron" could not offer any other logical explanation for the existence of the defects or show some intervening cause, a reasonable inference arises that the defects existed at the time of the sale. There was ample evidence that the vices were not apparent when the sale was consummated. In view of the fact that the essential ingredients for the successful maintenance of a redhibitory action in this case have been established, it is concluded that third party plaintiffs are entitled to have the sale of the mobile home from "Barron" rescinded.
We find the evidence in the record to sustain these findings and are of the opinion there is no error in the trial court's judgment ordering a rescission of the sale.
We shall next consider the request by defendants for modification of the judgment in relation to the sum they are entitled to recover from the third party defendant, Barron.
The judgment appealed from orders a return of the purchase price of the trailer less a credit of $2,625 as a fair rental value. The initial purchase price of the trailer appears from the record to be $10,542.
Louisiana Civil Code Article 2531, prior to the amendment by Acts 1974, Number 673§ 1 provided as follows:
The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.
The rights of these parties having become vested prior to the amendment of this article are to be resolved under the provisions as set forth above. See Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (La.App. 2nd Cir. 1975).
There is no evidence that the vendor had knowledge of the vices at the time of the sale in this case. Therefore, the vendor is only bound to restore the price and expenses of the sale in accord with the above article.
Finance charges incidental to the purchase may be recovered as an expense of the sale. Smith v. Max Thieme Chevrolet Company, Inc., supra; Media Production Consultants v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (La.1972); Johnson v. H. W. Parson Motors, Inc., 231 So.2d 13 (La.App. 1st Cir. 1970); Cain v. Rapides Dodge, Inc., 207 So.2d 918 (La.App. 3rd Cir. 1968); Lee v. Blanchard, 264 So.2d 364 (La.App. 1st Cir. 1972).
The copy of the credit sale and chattel mortgage agreement filed in evidence shows the total sales price and expenses relating to the sale (finance charges, recording, insurance) to be $19,977.76. Defendants are entitled to recover this sum from third party defendants, Barron, subject to the credit hereinafter discussed.
The trial court determined the refund of the purchase price to defendants should be subject to a credit of $2,625 as the fair rental value of the mobile home during the period it was occupied by them from December 11, 1972, through August 1974. Defendants contend this amount is excessive as it awards a credit equal to the full amount of estimated rental value as established by the evidence for a mobile home which does not contain defects. Defendants argue the enjoyment of the subject mobile home was seriously impaired due to its defective condition and that the fair rental value should be reduced to at least one-half that fixed by the trial judge.
*925 Although the subject unit contained sufficient inherent defects to render its purchase subject to the redhibitory action, it nevertheless served as a dwelling place for defendants during the period from the date of purchase until it was vacated in August 1974. Under the circumstances presented, we do not find it appropriate to disturb the trial court's determination of this purely factual question.
Defendants ask the judgment also be amended to allow recovery from Barron of the attorney fees for which they have been held liable under the judgment in favor of the Bank. This expense was occasioned by defendants' allowing the note to become in default and is not an "expense of the sale."
In summary, we find that defendants are entitled to have the sale rescinded and to recover from third party defendant the purchase price and related expenses totaling $19,977.76, subject to a credit of $2,625 as a fair rental value. We find no error in the trial court's assessment of costs in the proportion of one-half to defendants and one-half to third party defendants.
For the foregoing reasons the judgment is recast in pertinent part as follows:
It is ordered, adjudged and decreed that there be judgment in favor of third party plaintiffs, John M. Miller and Florece Miller, against third party defendant, Barron Mobile Homes, Inc., decreeing a rescission of the sale of the 1972 Morgan Mobile Home on December 11, 1972, and it is further ordered that third party plaintiffs have judgment against third party defendants in the sum of $19,977.76, subject to a credit of $2,625, together with legal interest thereon from date of judicial demand until paid.
Costs of this appeal are assessed to third party defendant, Barron Mobile Homes, Inc.
Amended in part and affirmed in part and rendered.
NOTES
[1] The exact sum intended to be included in the refund of the purchase price was not set fort in the trial court's judgment.