423 So.2d 41 (1982)
Charles E. COLEMAN, Jr.
v.
LANDRY & TURNER, INC.
No. 82-CA-0136.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
*42 Dale H. Hayes, Leonard & Hayes, Morgan City, for plaintiff-appellant.
Sidney A. Marchand, III, Talbot, Sotile & Carmouche, Donaldsonville, for defendant-appellee Landry & Turner, Inc.
Risley C. Triche, Triche, Sternfels & Nail, Napoleonville, for third party defendant-appellant Castle Industries of Arkansas.
Before EDWARDS, WATKINS and SHORTESS, JJ.
EDWARDS, Judge.
Plaintiff, Charles E. Coleman, Jr., brought this action in redhibition against Landry & Turner, Inc., seeking rescission of the sale of a mobile home. From a judgment in his favor, awarding a reduction in price in the amount of $890.50, plaintiff appeals.
The following facts are revealed from an examination of the record. On October 29, 1977, plaintiff and his wife purchased a new mobile home from Landry & Turner, Inc. The home had been manufactured by Castle Industries of Arkansas, Inc. The purchase price of the home was $17,850.00. The Colemans paid $3,000.00 in cash as a down payment and financed the remainder. Shortly after the home was delivered and set up, the Colemans began to report a number of defects and deficiencies to Landry & Turner. On a number of occasions, Landry & Turner sent repairmen to the Coleman home, seeking to remedy these problems. The Colemans also contacted Castle Industries with regard to their problems and the manufacturer sent out its own repairman on a couple of occasions.
The various attempts at repair failed to satisfy the Colemans. On January 23,1978, slightly less than three months after purchase of the mobile home, Charles Coleman filed suit against Landry & Turner. Coleman's suit alleged that the following uncorrected problems with the mobile home rendered it useless for the purpose for which it was purchased:

*43 "1. All three entrance doors to the mobile home are improperly sealed when closed and door frames are crooked.
2. In every room the ceiling is improperly joined with the walls; wind and cold air drafts pour into the home.
3. The flooring and carpet in the living room have mildewed due to rain damage and must be replaced; particle board and insulation under floor have been ruined.
4. Ceiling in living room and bed rooms [sic] damaged by unsightly and improper repair work.
5. The double windows in the kitchen and front bedroom are not air tight [sic] and cold air blows in.
6. Roof and outside walls of the trailer are loose and rattle in the wind; air drafts blow into the house through the bedroom closets, outlets and kitchen cabinets.
7. Various paneling and mouldings damaged by water leaks must be replaced and some mouldings are missing.
8. Wall in the hallway installed crooked."
Coleman's suit sought rescission of the sale, return of the down payment, reimbursement of all monthly installments paid, damages for mental anguish and attorney fees.
Landry & Turner answered plaintiff's petition, denying the allegations contained therein. Additionally, Landry & Turner filed a third-party demand against Castle Industries, seeking reimbursement for any sums which it might be called upon to pay plaintiff, as well as the costs of defending against plaintiff's suit. Subsequently, Castle Industries and Landry & Turner entered into a compromise agreement in which they agreed to share any liability and the costs of defending the suit on an equal basis. Castle Industries' exception of res judicata, based on that compromise agreement, was sustained and the third-party demand was dismissed.
The trial court concluded that the defects shown to exist in the mobile home fell far short of supporting a rescission of the sale. The court concluded that a reduction in the purchase price was the appropriate remedy and rendered judgment in favor of plaintiff in the amount of $890.50. This judgment in plaintiff's favor was rendered against both Landry & Turner and Castle Industries.
Although Castle Industries was not named as a defendant in plaintiff's suit, it was erroneously cast in judgment along with Landry & Turner. All parties have joined in a motion submitted to this court to amend the judgment to omit any reference to Castle Industries. This motion will be granted and the judgment amended accordingly.
Plaintiff has appealed. He asserts that the trial court erred in awarding a reduction in the price rather than rescission. Plaintiff also contends that the trial court erred in accepting the testimony of defendant's expert witness and in admitting into evidence certain photographs. Finally, plaintiff contends that the trial court erred in failing to award attorney fees.

RESCISSION OR REDUCTION?
The trial court concluded that the defects proven to exist would not support rescission of the sale. Plaintiff contends that the court erred in denying rescission.
Redhibitory actions are authorized by LSA-C.C. art. 2520, which provides:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
A redhibitory defect sufficient to entitle the buyer to rescind the sale is a non-apparent defect existing in the item prior to the sale which renders the item useless or makes its use so inconvenient or imperfect that the buyer would not have purchased the item had he known of the defects. LSA-C.C. arts. 2520, 2521, 2530.
*44 If the evidence in a redhibitory action establishes only a partial failure of consideration, a reduction in the price, rather than rescission of the sale, is appropriate. Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir.1975); Wolfe v. Henderson Ford, Inc., 277 So.2d 215 (La. App. 3rd Cir.1973); Ingersoll v. Star Chrysler, Inc., 234 So.2d 85 (La.App. 4th Cir.), cert. denied, 256 La. 365, 236 So.2d 499 (La.1970). See also LSA-C.C. arts. 2541, 2543.
In the instant case, the trial judge did not abuse his discretion in finding that the defects were not sufficient for rescission. Cassey v. Arnaudville Industries, Inc., 393 So.2d 215 (La.App. 1st Cir.1980). There is no error in the conclusion that the only defects which plaintiff proved, loose moldings, crooked walls, leaky doors, scratched ceiling panels and cold air drafts, did not rise to the level of defects which require rescission. Compare Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La.App. 1st Cir.1976); First National Bank of Ruston v. Miller, 329 So.2d 919 (La.App. 2nd Cir.1976), cert. denied 333 So.2d 243 (1976).

EXPERT TESTIMONY
The trial court based the amount of the reduction in price upon the repair estimates made by defendant's expert witness in the field of mobile home repairs. Plaintiff contends that the trial court erred in accepting the defense witness as an expert and in basing the amount of recovery on the testimony of that witness.
Both plaintiff and defendant produced expert witnesses who were experienced in the field of mobile home repairs. Plaintiff's witness, Gene Miller, testified by way of deposition with regard to an inspection he made of plaintiff's trailer in early 1978, over two and one-half years prior to trial. At the time of his inspection, Miller prepared a list of forty-seven specific defects which he found to exist in the trailer. Miller's testimony is replete with instances of his inability to remember the specifics of his examination. In nearly every instance, his account of what he saw was based solely on the list of defects which he had prepared. Additionally, Miller failed to distinguish between defects in the trailer which existed at the time of the sale and those which might have arisen later. Miller estimated the costs of repairing all forty-seven defects to be between $5,000.00 and $6,000.00. This estimate was not based on an item-by-item calculation, but was characterized by the witness as a "ball park figure."
The defense also presented the testimony of an expert, Howard Miley. Miley's qualifications as an expert in the field of mobile home repairs were challenged by the plaintiff, but he was accepted as such by the trial court. Plaintiff contends that the trial court erred in doing so.
The record reveals that Miley has been in the business of setting up and repairing mobile homes since 1971. For about one and one-half years prior to trial, Miley had done little repair work, but concentrated on the towing and setting up of mobile homes. Miley testified that he was familiar with the price of material and labor involved in the repair of mobile homes. The trial court did not abuse its discretion in accepting Miley as an expert in the field of mobile home repairs. Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir.1975), cert. denied 323 So.2d 478 (1975). See also LSA-C.C.P. art. 192.
Howard Miley inspected the mobile home in question approximately one month before the trial. He testified with regard to the defects which he observed in the trailer and gave an estimate of the cost of repairing each item. Miley's repair cost estimates formed the basis for the trial court's judgment.
The trial judge disregarded the testimony of Miller, plaintiff's expert, calling it "worthless." He noted that Miller's testimony was "replete with vagueness, admissions either that he did not remember the cause or condition of some items, and admissions that he did not know what caused certain problems." Furthermore, the trial judge noted that Miller's repair estimate was not substantiated by an itemized list. *45 Under these circumstances, there is no error in the trial court's decision to disregard Miller's testimony and rely upon that of Miley.

ADMISSION OF PHOTOGRAPHS
The trial court admitted into evidence, over plaintiff's objection, six photographs of the mobile home which were taken by Howard Miley during his inspection. Plaintiff contends that these photographs were erroneously admitted because they were taken nearly three years after purchase of the mobile home. Plaintiff relies upon Greeves v. S.H. Kress & Co., 198 So. 171 (Orl.App.1940). In Greeves the court held that photographs of a retail store floor, taken one year after plaintiff allegedly slipped and fell on that floor, were of no probative value because of the time lapse and thus inadmissible. The instant case is easily distinguished from Greeves, however. In Greeves, the building in which the floor was located was in the possession of the defendant (who sought to introduce the photographs) and could have been cleaned or modified in the intervening time. In the present case, however, the Colemans were in sole possession of the mobile home during the three-year period and there was no testimony to indicate that they had repaired or changed the condition of the mobile home so as to affect the defects.
Plaintiff also contends that an adequate foundation was not laid for the admission of the photographs. This argument is likewise without merit. Howard Miley testified that the pictures were taken by him and that they accurately represented what he saw. A proper foundation was laid and the photographs were properly admitted into evidence.
Furthermore, assuming, arguendo, that there was error in the admission of the photographs, plaintiff has failed to demonstrate that any prejudice resulted therefrom. In fact, the admission of the photographs actually aided plaintiff's case by documenting the existence of some of the defects.

ATTORNEY FEES
Plaintiff contends that the trial court erred in failing to award him attorney fees. The applicable law is found in LSA-C.C. art. 2545, which provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
The manufacturer of an item is presumed to know of the defects in a thing made by him. Rey v. Cuccia, 298 So.2d 840 (La.1974). In order to recover attorney fees against a seller who is not the manufacturer, however, the buyer must prove the seller's knowledge of the defect at the time of the sale. There is no evidence in the record to indicate that Landry & Turner, Inc. was aware of the defects in the trailer prior to the sale. Therefore, the trial court was correct in not ordering the seller to pay attorney fees. Purvis v. Statewide Trailer Sales, supra; First National Bank of Ruston v. Miller, supra.
For the foregoing reasons, the judgment of the district court is amended to omit any reference therein to Castle Industries. The remainder of the district court's judgment is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.