DOMENGEAUX, Judge.
Luther Odis Barrett, Jr. and Erma Faye Barrett commenced these proceedings to rescind the sale of their Sunrizon Homes, Inc. 1984 Suncoast Mobile Home. The Bar-retts named as defendants: (1) Ed’s Manufactured Housing, Inc. (Ed’s), the retailer from whom they had purchased the home; and (2) Sunrizon Homes, Inc. (Sunrizon), the manufacturer of the home. The plaintiffs alleged, inter alia, that vices or defects in the roof and flooring constituted redhibi-tory defects entitling them to rescind the sale.
The vices which the plaintiffs contend are redhibitory are vibrations in the roof which result in rumbling noises and the installation of a particle board flooring subsequent to their requesting and receiving assurances that their home would be constructed with plywood flooring. Although the home had been delivered with other imperfections, these deficiencies had been repaired by trial and were not taken into consideration by the Trial Judge.
The roof vibrations, known in the mobile home industry as “roof rumbles” or “wind rumbles”, were the plaintiffs’ most serious allegation. The plaintiffs’ home, as do most mobile homes, has a galvanized metal roof. When strong winds blow across the roof, the metal expands and contracts. *834 The roof, as a result, moves as waves on the sea which causes the “rumbling” sound.
The plaintiffs and Luther Barrett’s sister, Patricia Diane Fisher, all testified that the rumbling noise was very severe. Luther Barrett testified that the noise problem began shortly after they moved into the home in early 1984. He stated that the rumbling sounded like tin being waved. He also noted that he actually saw the roof move. Barrett, although acknowledging the efforts made by Ed’s and Sunrizon to alleviate the rumbling, stated that the noise had never been entirely eliminated and that it was very irritating.
Erma Barrett’s testimony was similar to that of her husband. She testified that the rumbling was quite clamorous and that it occurred even during slight breezes. Barrett did state, however, that the efforts to remedy the situation had reduced the noise level. She was also quick to point out that the results were not 100% satisfactory.
Fisher testified that she was personally familiar with the Barretts’ roof rumbling. She testified that she visited her brother as often as three or four times a week and that she had lived with him in the home for a two and one-half to three week period. Fisher stated that the roof rumbling sounded “like a sheet of tin being rippled inside [one’s] hand.” She also stated that she had lived in another mobile home and that she had never before heard roof rumbles.
The Barretts also contend that they are entitled to rescind the sale because they specifically ordered plywood flooring and they received a home constructed with particle board. The plaintiffs stated that they specified plywood flooring because they considered it more durable than particle board, particularly in the humid Louisiana climate.
Ed’s and Sunrizon presented, in defense of the plaintiffs’ allegations, the testimony of: (1) L.E. Thompson, President of Ed’s; (2) Richard Lee Baker, the general manager and, at the time in question, the sales manager of Sunrizon; (3) Andrew G. Admire, the Chief Mobile Home Inspector of the Louisiana State Fire Marshal’s Office; and (4) Ted Ernest Oberg, an independent mobil home repair contractor with approximately fourteen years experience. The defendants and their expert witnesses presented a strong rebuttal.
The witnesses testified that wind rumbles were very common in mobile homes. They testified that the Barretts’ roof was a “cathedral” roof with a single sheet of galvanized metal stretched across it. They explained that strong winds caused expansions and contractions in the metal resulting in the rumbling noise.
The witnesses also advised the Court that certain factors play a role in the severity of the noise. The two primary factors mentioned were: (1) the location of the home, whether it was in a windy area or not; and (2) the presence of any buffers, such as trees, which would reduce the speed of the wind prior to impact with the home.
Baker, who had lived in a mobile home and knew of roof rumbles first hand, testified that because the problem is not uncommon, Sunrizon alerts all its purchasers of the possibility of rumbling in their Owner’s Manual. He also apprised the Court that the United States Department of Housing and Urban Development had classified central Louisiana, the part of the State in which the Barretts resided, as a “high wind zone area.” Baker further testified that Sunrizon offers shingle roofs as an options on its homes and that shingle roofs do not rumble. It was inferred that shingle roofs are an option, as opposed to a standard feature, because they are more expensive.
Baker, to a large extent merely reiterating Luther Barrett’s testimony, told the Court of Sunrizon’s efforts to eliminate the Barretts’ roof rumbling. Baker stated that Sunrizon initially attached sound pads to the roof. These pads, he stated, were designed to absorb vibrations and reduce the impact of the wind. He further testified that Sunrizon installed “rumble buttons” when the sound pads did not reduce the rumbling to the Barretts’ satisfaction. Rumble buttons are devices that are screwed into the roof of the home and perform similar to automobile shock ab *835 sorbers, absorbing vibrations and reducing the rumbling. Ultimately, Sunrizon applied a concrete-like substance called “cool-crete” to the Barretts’ roof. The cool-crete was poured onto the Barretts’ roof and, in essence, has acted as a second roof weighing down the first.[1]
Admire, the State Fire Marshal’s Chief Mobile Home Inspector, testified as an expert in the field of mobil home construction. He testified that his position required familiarity with all H.U.D. regulations and that the design of the Barretts’ roof was in full compliance.
In defense of the Barretts’ allegations regarding the particle board flooring, both defendants attempted to place responsibility for the error on the other. Ed’s contended that it had an oral standing order ■with Sunrizon for plywood flooring only. Sunrizon, who customarily manufactured homes with only particle board flooring, denied ever receiving such a standing order from Ed’s.
The Trial Court rendered judgment in favor of the Barretts and against Ed’s. The plaintiffs were not, however, granted a rescission of the sale. The Trial Judge concluded that although the rumbling was “probably unpleasant and disturbing”, it did not “constitute a manufacturing defect sufficient to rescind the sale or reduce the price.” The Court did, however, reduce the sale price by $500.00 for the error it attributed to Ed’s, the failure to order plywood flooring. The plaintiffs were additionally awarded $1,500.00 in attorney’s fees and court costs. All other actions, including the Barretts’ action against Sunrizon, were dismissed. Ed’s Manufactured Housing, Inc., the only defendant cast in judgment, did not appeal the Trial Court judgment. Accordingly, the judgment is final as to it.
This appeal was perfected by the plaintiffs. They contend that the Trial Court erred in failing to conclude that the roof vibrations and the particle board flooring entitled them to rescind the sale. Having thoroughly reviewed the record and researched the relevant law, we conclude that the judgment of the District Court should be affirmed.
La.Civ.Code art. 2520 (1870) provides that, “[rjedhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.” In order for the plaintiffs to prevail on their allegation that the roof vibrations render the home redhibitorily defective, they would have to establish a vice in the design or construction of the roof, that the defect was non-apparent, that it existed prior to the sale, and that it rendered the home useless or its use so inconvenient and imperfect that they would not have purchased it had they known of it. Reiners v. Stran-Steel Corporation, 317 So.2d 657 (La.App. 3rd Cir.1975); writ denied, 320 So.2d 914 (La.1975); Coleman v. Landry & Turner, Inc., 423 So.2d 41 (La.App. 1st Cir.1982). A redhibitory “vice or defect,” as contemplated by article 2520, is a “physical imperfection or deformity; or a lacking of necessary components or level of quality.” Ezell v. General Motors Corporation, 446 So.2d 954 (La.App. 3rd Cir.1984); writ denied, 449 So.2d 1350 (La.1984); Williams v. Louisiana Machinery Co., Inc., 387 So. 2d 8 (La.App. 3rd Cir.1980).
A successful suit premised on the particle board flooring would require that the plaintiffs prove by a preponderance of the evidence the elements of La.Civ.Code art. 2529 (1870). Article 2529 provides, “[a] declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.” The plaintiffs would have to establish according to article 2529 that Ed’s assured them that their home would have a plywood floor and *836 that plywood flooring was their principal motive in making the purchase. Reiners, supra. The plaintiffs need not establish that the particle board flooring itself was defective. Reiners, supra. See also, Fusilier v. Ardoin, 266 So.2d 531 (La.App. 3rd Cir.1972).
The Trial Court correctly concluded that the roof vibrations were not a redhibi-tory vice. The defendants, through their expert witnesses, established that “wind rumbling” in mobile homes with galvanized roofs is very common. They also established the factors which affect the rumbling, the location of the home and the presence of any buffers. Luther Barrett himself testified that his home was situated more or less in the center of an open one acre lot and that the only buffers were thickets of pinetrees on the adjacent properties.
The defendants proved that the Sunrizon roof design was approved by the Department of Housing and Urban Development and that the home was located in a high wind zone. The plaintiffs, on the other hand, failed to prove that their particular home was defective. The plaintiffs called no experts and relied solely on their testimony and that of Luther Barrett’s sister, Fisher, that the rumbling was very noisy.
The plaintiffs, because of the very nature of a redhibitory action, alleged that they were not aware of wind vibrations and that had they been, they would not have purchased the home. Luther Barrett explicitly stated under proffered cross-examination, “Fve never heard a rumble in another mobile home. I’ve never heard one in one I’ve previously owned.” When further questioned, he again stated, “I have never heard a rumble in another mobile home.” Upon being recalled to the witness stand by his attorney, prior to the defense resting, Luther Barrett was asked, “Is the noise that you have endured in your current home is it more than in the prior mobile homes?” He answered, “It’s more than any other mobile home that I’ve ever been in or lived in.” Under recross, Sunri-zon’s attorney asked, “Mr. Barrett, you said the rumble is more than any other mobile home that you’ve ever been in or lived in so you have been in other mobile homes that did make roof noises, isn’t that true?” Barrett responded, “not as much as this one.” It is apparent from Luther Barrett’s testimony and the fact that Sunri-zon’s Owner’s Manual alerts all purchasers of the possibility of wind rumbles that the Barretts purchased their home with the knowledge that mobile home roofs have a tendency to rumble.
The plaintiffs, with regard to the particle board flooring, are correct when they allege it entitles them to bring an action in redhibition. The Trial Court found that the Barretts had specifically ordered a plywood floor because of the qualities plywood possessed. The Court also concluded that Ed’s was responsible for failing to communicate the Barrett’s order to Sunrizon.
The plaintiffs on appeal, however, are incorrect when they contend that the Trial Court erred in reducing the purchase price rather than rescinding the sale. La. Civ.Code art. 2543 (1870) provides, in part, “[b]ut in a redhibitory suit, the judge may decree merely a reduction of the price.” Article 2543 grants trial judges considerable discretion in redhibitory actions. Abshire v. W.D.L. Investments, Inc., 428 So. 2d 1145 (La.App. 1st Cir.1983), writ denied, 433 So.2d 161 (La.1983); Cassey v. Arnaudville Industries, Inc., 393 So.2d 215 (La.App. 1st Cir.1980).
The evidence indicated that had the plaintiffs received a mobile home with plywood flooring rather than particle board flooring it would have cost them an additional $200.00. The Trial Judge reduced the sale price of the Barrett’s home by $500.00. The standard for reducing the sale price in a redhibition action is “the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defect.” Ball v. Ford Motor Company, 407 So.2d 777, 781 (La.App. 1st Cir.1981). See also, Guillory v. Pitre Ford Co., 345 So.2d 1274 (La.App. 3rd Cir.1977). We can *837 not say that the trial judge in this instance abused his discretion.
For the above and foregoing reasons the judgment of the District Court is affirmed.
AFFIRMED.

. The evidence indicated that shortly after the cool-crete was applied rain fell, weakening the substance and causing some of it to wash away. Sunrizon attempted to return and reapply the cool-crete, but was advised by the Barretts that it was unnecessary because they had learned that the home had particle board flooring and they intended to sue for rescission.