## Harvey v. Kendall.

Where a disease with which a slave was affected at the time of the sale terminates fatally within three months thereafter, without any fault of the purchaser; and the evidence shows that both the vendor and vendee were ignorant of its existence at the time of the sale, the vendor will be bound only to restore the price, and to reimburse the expenses occasioned by the sale and those incurred for the preservation of the thing sold; the cost of a *post mortem* examination, and the expenses of interment, are not a part of the charges for which he is liable. C. C. 2509.

Where the purchaser of a slave for cash sues to recover back the amount paid by him, with damages, on the ground of the death of the slave from a redhibitory disease with which he was affected at the time of the sale, the vendee will not be allowed any thing for the services of the slave, the use of the money being an offsett to his services.

APPEAL from the First District Court of New Orleans, *McHenry*, J. The facts of this case are stated in the opinion *infrâ*.

*Collens*, for the plaintiff, contended that the point to be decided, in a case like this, is not whether the disease was or not possibly curable, but whether or not it existed at the time of the sale, and was of such a nature as is contemplated by art. 2496 of the Civ. Code. The old Code required that the rehibitory disease should be in its nature incurable; but we are now governed by a more practical and rational rule. 7 La. 519.

*Hunt* and *Hart*, for the appellant, cited *Serapurn* v. *Bosquet*, 15 La. 511; *Kiper* v. *Nutall*, 1 Rob. 46; *Palmer* v. *Taylor*, Ib. 412; *Soubie* v. *Sougeron*, 5 Ib. 150; arguing that the vendor was not liable as the disease was curable, and that the purchaser failed to procure medical assistance, and to bestow on the slave the care and attention required by law.

The judgment of the court was pronounced by

King, J.[*] This action is instituted to recover the price paid by the plaintiff for a slave, who is charged to have died of a redhibitory disease with which he was affected prior to, and at the date of, the sale. A further sum is also claimed for expenses incurred for the preservation of the slave, for an autopsy, and for the interment. There was a judgment against the defendant *Kendall*, from which he has appealed.

The evidence shows that the slave in question remained in the possession of the plaintiff for seventy-one days after the sale, apparently in perfect health, and performing his usual labor without interruption. At the expiration of that time he reported himself sick. The symptoms which manifested themselves were so slight, that the plaintiff's husband, after conferring with one of his neighbors who was at the time present, considered it doubtful whether the slave was really sick, and concluded that it was unnecessary to call in medical aid. The slave was placed in the plantation hospital under the care of a nurse, and within less than forty-eight hours after he announced his illness, died, no alarming symptoms having manifested themselves until within a few moments previous to his dissolution. A *post mortem* examination was made by two physicians, who discovered the existence of a chronic affection of the liver, to which they ascribe the sudden death, and which, in their opinion, must have existed for some time previous to the sale. Other physicians, who were not present at the autopsy, were also examined as witnesses, and, as usually occurs on such

---

[*] Eustis, C. J. absent    Rost, J. recused himself on account of relationship to one of the parties.

occasions, some diversity of medical opinion was expressed. The conflict of testimony, however, is not such as to leave any doubt that the cause of the death was discovered. We think it is satisfactorily shown that the slave was affected with a chronic complaint at the date of the sale, of which he subsequently died, without the fault or negligence of the owner. Some importance has been attached to the fact, that several of the physicians declare that the disease was not incurable in its nature, and might have been overcome if timely medical aid had been called in, and that, in the present instance, the patient was not subjected to treatment. The disease is described by all of the witnesses as being slow in its progress, and, in the present instance, was so insidious in its approaches, that it manifested itself by no external symptoms, by no suffering of any kind, which was ever communicated to the owner, and never for a moment interrupted the labor of the slave until within a few hours previous to his death. How, under these circumstances, was it possible for the owner to have caused the slave to be treated for a disease, which was only revealed by an examination after death. The failure to call in a physician when the slave announced his illness, arose from the same cause. No symptoms manifested themselves which excited apprehensions for the slave's safety, or announced a malady which seemed to require the skill of a physician.

The whole tenor of the testimony shows that the defendant must have been ignorant, at the time of the sale, of the disease under which the slave labored, and so thought the judge of the court below. He is consequently only bound to restore the price, and to reimburse the expenses occasioned by the sale and incurred for the preservation of the thing. He has, however, been decreed to pay $60, the amount disbursed for the examination after death, and for expenses of interment. These are not among the charges for which the defendant is liable. C. C. art. 2509. *Fuentes* v. *Caballero*, 1 An. Rep, 27. In this respect the judgment must be corrected.

The defendant contends that he should be allowed compensation for the services of the slave while in the plaintiff's possession. The sale was for cash. The use of the money paid as the price stands as an offset against the services of the slave.

It is therefore ordered that the judgment of the District Court be reversed. It is further decreed that the plaintiff recover of the defendant *Kendall*, $537 50, with five per cent interest from the 1st October, 1846, the date of judicial demand, until paid; the appellee paying the costs of this appeal, and the defendant those of the court below.