359 So.2d 607 (1978)
Percy M. ALEXANDER, Jr., Receiver, et al.
v.
BURROUGHS CORPORATION.
No. 61106.
Supreme Court of Louisiana.
May 22, 1978.
*608 Harry R. Nelson, Frank M. Dodson, Roland J. Achee, Shreveport, for plaintiffs-applicants.
S. Maurice Hicks, Jr., Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for defendant-respondent.
DIXON, Justice.
This is a redhibitory action arising from the sale of an accounting computer. The suit was brought by the receiver for Peerless Supply Co., Inc., (the purchaser) and General Electric Credit Corporation, which financed the purchase.
In its opinion, the district court, finding redhibitory vices in the machine, ordered the rescission of the sale, but refused to award damages, attorney's fees, or the return of that part of the purchase price paid by Peerless, and expenses incurred by Peerless, holding that those expenses of the sale were offset by Peerless' use of the machine.
The court of appeal affirmed the trial court's finding of redhibitory defects and, reversing the trial court's rejection of plaintiffs' other demands, awarded the return of the purchase price, expenses, attorneys' fees, and damages, and ordered the cancellation of the chattel mortgage. However, the appellate court denied plaintiffs' claim *609 for reimbursement of the $5100 finance charge Peerless incurred in obtaining the $17,000 loan from GECC. The court of appeal considered that the finance charge claimed by Peerless was equivalent to a demand by Peerless for interest on part of the purchase price received and used by Burroughs, and held that Burroughs was entitled to interest free use of the purchase price "as an equivalent to Peerless's use of the computer." Legal interest was awarded the plaintiffs from rendition of the trial court judgment. 350 So.2d 988 (La.App. 1977).
Plaintiffs applied for review contending that the appellate court erred in holding Peerless' use of the computer was compensated by Burroughs' use of the purchase price, and that legal interest should have been awarded from date of judicial demand, rather than from date of trial court judgment. 353 So.2d 1034 (La.1978).
Peerless purchased the computer from Burroughs in February or March of 1971. Even before the computer was delivered on April 24, 1971, difficulties were experienced. (Peerless' payroll employee had used the machine at Burroughs' offices and testified that it "jumped the program."). Testimony at trial established that there was serious malfunction occurring with great frequency from the time the computer was installed. In late October, 1971, after the company had fallen behind in its record keeping due to the machine's poor performance, Peerless wrote a letter to Burroughs demanding that the machine be repaired to perform properly, or that Burroughs cancel the contract and pick up the machine. Peerless also demanded that Burroughs supply additional help to enable Peerless to update its records. In November, 1971, Burroughs replaced the memory bank on the computer, Peerless grounded the electric receptacle in which the machine was plugged, and Burroughs complied with Peerless' request to supply help.
Conditions seemed to improve, but soon breakdowns resumed with increasing frequency. Due to the continuous problems with the machine, Peerless employees were required to review much of the machine's calculations, resulting in their working overtime and causing additional expense and inconvenience to the company.
All repairs were under the company's contractual warranty until March of 1972. Invoices for repair service showed that from late March to late May, 1972, repairs were made on the computer every few days.
In March of 1972 Percy Alexander was appointed receiver to carry out a Chapter II reorganization of Peerless. In June of 1972 he abandoned the company's use of the machine and had his attorney make formal demand of rescission on Burroughs. Burroughs refused. Suit was filed October 25, 1972; trial was held October 16 and 17, 1975 and judgment was rendered March 8, 1977.
At the time suit was instituted, the following Civil Code articles, dealing with the liability of a seller for redhibitory vices, were in effect:
"Art. 2531. The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.
Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
Burroughs, as a manufacturer, is presumed to know of the defects of the thing which it manufactures and therefore is deemed to be in bad faith. Rey v. Cuccia, 298 So.2d 840 (La.1974); Radalec, Inc. v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955); Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952); George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905). Hence, article 2545 is applicable to the instant case.
Peerless argues that a bad faith seller should not be entitled to compensation from the purchaser for the use of the thing because *610 C.C. 2545, setting out the obligation of the bad faith seller, omits any reference such as that found in C.C. 2531, where the good faith seller is obligated to return the price and expenses of the sale "unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses." Alternatively, Peerless argues that any compensation due the seller is limited to "fruits" by the code article, a term not broad enough to include "use".
Article 2545 does not specifically provide that the seller is to be compensated for the use of the defective thing. The language of the article, however, ("besides the restitution of the price and repayment of the expenses") appears to incorporate the provisions of article 2531 even though they are not set out in their entirety. The courts of appeal have not generally treated good faith and bad faith vendors differently in compensating the vendors for the buyer's use of the defective thing.[1]
Article 2531, as it read at the time of this suit, merely provided a credit to the seller for the "fruits" drawn from the thing by the purchaser against the expenses the purchaser incurred by the sale or by the preservation of the thing. It was not until 1974 that the statute's language was amended to allow a credit for the value of any "fruits or use." La. Acts 1974, No. 673 § 1. Plaintiffs argue that "fruits" and "use" are distinct incidents of ownership, and that the legislative amendment merely confirmed this distinction, because if the word "fruits" had included the buyer's "use," there would have been no need for the amendment.
Some writers have viewed the 1974 amendment as merely a codification of the jurisprudence on the subject. 35 La.L.Rev. 597, 642-43 (1975); 49 Tul.L.Rev. 484, 488-89 (1975). Nevertheless, a review of the cases shows that the courts, and often the same circuits, were inconsistent in the allowance or disallowance of a credit for use.[2] In any event, the amendment has clarified the confusion that had existed.
A credit for a purchaser's use of a product may be proper in certain instances, even in favor of a bad faith seller. In the absence of specific provisions punitive damages are not obtainable in Louisiana; the object of the provisions governing redhibitory vices is to restore the purchaser, as much as possible, to the condition he enjoyed prior to the sale. Compensation for *611 the buyer's use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair. One court held that a buyer had not waived his right to a redhibitory action by his continued use of a defective refrigeration truck for the following reasons:
"These decisions hold that, in present circumstances, upon rescission of the sale the buyer is entitled to the return of the full purchase price, despite the usual wear and tear occasioned by the buyer's use of the vehicle over the several months during which the seller is attempting to repair it. The use of a vehicle with redhibitory defects is regarded as at the seller's risk during the period in which the seller attempts to remove the defects, if in the ultimate event the redhibitory defects are not repairable and do in fact render the vehicle totally useless for the purpose for which purchased; since this use by the buyer is continued upon the actual or implied representation of the seller that the defects are repairable and are not of a redhibitory nature entitling the buyer to rescission. . . ." Hebert v. Claude Y. Woolfolk Corp., 176 So.2d 814, 817 (La.App., 3d Cir. 1965). (Emphasis added).
In the Hebert case, supra, no credit was allowed for the purchaser's use for 8500 miles over 7½ months, because the truck's defects were found to have rendered it totally useless. Often a defect in the thing, although redhibitory, does not render the thing absolutely useless. In such cases, where the purchaser has derived some benefit from the thing before its return, in spite of the defects, it is proper to award a credit for use.[3]
In the instant case, the Court of Appeal recognized that Burroughs failed to prove the value of Peerless' use of the computer to enable it to assert a credit for the use. 350 So.2d at 993. Nevertheless, the court followed ". . . the rule that use of the thing and use of the price are equal . . . ." Id., held that Burroughs was entitled to the interest-free use of the $22,000 plus purchase price for over 6 years, and denied Peerless' claim for the recovery of the $5100 finance charge it paid to GECC to borrow most of that purchase price.
This "rule of equivalencies" was based on the early cases of Farmer v. Fisk, 19 La. 191, 9 Rob. 351 (1844) and Harvey v. Kendall, 2 La.Ann. 748 (1847). Both cases, involving redhibitory actions for defects in slaves, held that, although the vendor could not deduct the value of the slave's services from the return of the purchase price, the interest on the purchase money paid to and held by the vendor was considered equivalent to the use of the slave, and thus the two amounts were allowed to be set off. The Court in Farmer, supra, cited the French commentator, Troplong, as authority. However, although Troplong and most of the French commentators agree that the fruits of the thing are compensated by the interest on the price, they do not say that the two should automatically be deemed *612 equivalents. 30 La.L.Rev. 508, 516 n. 42 (1970). The Second Circuit recently recognized the inequity in such a "rule of equivalencies":
". . . the Supreme Court, in the Farmer and Harvey cases, supra, did not hold that in the recission of cash sales the use of the thing by the purchaser and the use of the purchase money by the seller must in all cases be considered as exact equivalents. Cf. Comment, 30 La.L.Rev. 508 (1970). Such an interpretation of Civil Code Article 2531 would also tend to defeat the purpose of replacing the parties in the same position in which they were before the sale because it would unfairly penalize the seller in the situations where the use of the thing sold is substantially more valuable then [sic] the use of the purchase money. Instead, the court is required to independently assess the respective values received by the buyer and the seller and determine the extent to which one has been compensated by the other." Smith v. Max Thieme Chevrolet Co., 315 So.2d 82, 88 (La.App., 2d Cir. 1975). See also 30 La.L.Rev. at 509, n. 6.
The facts of the instant case present a situation in which the buyer, rather than the seller, is penalized by the application of the rule of equivalencies. The record is convincing that the defects in the Burroughs computer were so significant and consistent as to render the machine absolutely useless to Peerless. We recognize that for approximately two to three months after the computer's memory bank was replaced and some wiring was done in the building, the computer functioned with much less difficulty. Nevertheless, we find that the benefit of that use was overridden by the serious malfunction before and after that time which required company employees to monitor the machine's figures for accuracy, watch payroll checks to make sure that the correct name was recorded, and eventually abandon use of the computer for another accounting machine ten years older, which the company had used prior to the computer purchase. All of this caused the company to incur substantial overtime expenses for its employees who were forced to manually update accounts. In addition, the receiver testified that due to the machine's inaccurate billing (often the computer would credit or charge the wrong accounts) the company was forced to sustain the loss of unpaid bills which could not be verified in the company records. Hence, we conclude that the use of the computer did not bring value to the buyer; therefore, the court of appeal erred in denying plaintiffs recovery of the $5100 finance charge incurred in obtaining the loan from GECC, an "expense occasioned by the sale." C.C. 2531. To the extent that Farmer v. Fisk, supra, and Harvey v. Kendall, supra, are inconsistent with this opinion, they are overruled.
Plaintiffs also contend that the appellate court erred in awarding interest from rendition of the trial court's judgment on March 8, 1977 rather than from the date of judicial demand on October 25, 1972. The court found that although Peerless discontinued use of the computer in June, 1972, it was still in the company's possession and "theoretically . . . available for use," 350 So.2d at 993.[4]
Defendant contends that plaintiffs' suit was grounded in contract and that R.S. 13:4203, which provides that "legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto' . . ." does not apply. Hence, the argument is made that since no decision regarding the rescission of the sale in a redhibition action is made until judgment, interest should not begin to run until the date of that judgment.
That this suit has a contractual rather than a delictual source, making R.S. 13:4203 inapplicable, is no impediment to plaintiff's demands for interest.
*613 One of the incidents of the obligations of contracts is that the one who violates those obligations is liable for damages "which the other party has sustained by his default." C.C. 1930. Damages are due "from the moment" of an active violation of a contract (C.C. 1932) and from "the time that the debtor has been put in default" when the breach has been passive. C.C. 1933. A debtor may be put in default "either by the commencement of a suit, by a demand in writing . . . ." or in other ways. C.C. 1911. The damages due for delay in the performance of an obligation to pay money are called interest. "C.C. 1935. "All debts shall bear interest at the rate of seven per centum per annum from the time they became due, unless otherwise stipulated." C.C. 1938.
The decisions involving interest on sums recovered by suit are naturally myriad and because of their great number, if for no other reason, inconsistent. There is, however, a thread of consistency among the cases. Article 554 of the Louisiana Code of Practice of 1825 provided that interest should not run on accounts or unliquidated claims, but was repealed by La.Acts 1839, No. 53 § 1. This Court once commented,
"We have uniformly held that, since the passage of that act, all sums due on contracts bear interest from judicial demand, even where none has been stipulated, and the demand is unliquidated." Sullivan v. Williams, 2 La.Ann. 876, 878 (1847).
See also Petrie v. Wofford, 3 La.Ann. 562 (1848); Calhoun v. Louisiana Materials Co., 206 So.2d 147, 151-52 (4th Cir. 1968), writ denied, 251 La. 1050, 208 So.2d 324 (1968); Friede v. Myles Salt Co., 177 So. 105, 108 (Orl.La.App.1937).
The question of the running of legal interest in a redhibition action has been considered at least twice before by this Court. In Donavan v. Mooney, 5 La. 57 (1833), decided prior to the repeal of article 554 of the 1825 Code of Practice (see discussion, supra), it was held that on recission of the sale, the plaintiff (purchaser) was entitled to interest from the date of tender or delivery of the property which, presumably, in the Donavan case was the date of judicial demand. However, in the later case of Burnham v. Hart, 15 La.Ann. 517 (1860), this Court held that legal interest was due from the date of the sale, which was considered to be the time of default. (The decision was based on article 1932 of the Civil Code of 1825, a predecessor to C.C. 1938, which provided that interest was to be calculated on the sum due at the time of default.)
The latter decision might have been due to the belief at the time that a redhibitory action results in a "recission" of the sale, voiding the sale ah initio. See 4 Tul.L.Rev. 433, 434-35 (1929-30). There exists, however, a conflicting theory that the redhibitory action is actually one of "resolution" where the contract is enforced until the date of the resolution. See 22 La.B.J. 27, 29-30 (1974); 30 La.L.Rev. 508, 515 (1970). The enactment of the amendment to C.C. 2531 by La.Acts 1974, No. 673, specifically allowing a credit to the seller for the value of the use of the thing, bolsters the "resolution theory" of redhibitory actions. 49 Tul. L.Rev. 484, n. 7 (1975). Therefore, we conclude that the better approach is that found in Donavan v. Mooney, supra, where the court held that the purchaser, in order to be restored to the position he was in before the sale of the defective slave, should recover interest on the price from the date he tendered the slave to the seller (presumably in the petition).
Except for attorneys' fees we find that plaintiffs' claim was ascertainable on the date of formal demand for "cancellation" of the purchase by letter dated June 29, 1972 from the attorney for Percy Alexander to Burroughs Corporation when defendant was put in default,[5] and hence interest *614 should run from that date, rather than from date of judgment or from date of judicial demand.[6] The amount of attorneys' fees due was not ascertainable until awarded by the court, and interest, therefore, will run on that demand only from the date awarded.
Plaintiffs also pray for additional attorneys' fees in the amount of $4000 for their services on appeal. We find an additional $2000 to be a reasonable figure.
For the reasons assigned, the judgment of the court of appeal is affirmed insofar as it affirmed the trial court's resolution of the sale and awarded the return of the purchase price, certain expenses of the sale, and damages. The judgment is amended to award interest from June 29, 1972, instead of March 8, 1977. That portion of the judgment denying plaintiffs recovery of the finance charge incurred in the purchase of the computer is reversed and the plaintiff is now awarded $5,100, with interest from June 29, 1972. Further, we affirm the award of attorneys' fees and interest by the court of appeal, and award the additional amount of $2000 as attorneys' fees to plaintiff, with 7% per annum interest from the date of this judgment; defendant is cast for all costs.
NOTES
[1] See, e. g., the following cases all of which granted a set off to a manufacturer for the buyer's use of the thing: Weaver v. Fleetwood Homes of Mississippi, Inc., 327 So.2d 172 (3d Cir. 1976); Peoples Furniture & Gift v. Carson Hicks/Friedrichs Refrigeration, Inc., 326 So.2d 919 (3d Cir. 1976) writ granted, 329 So.2d 754 (1976), aff'd, 333 So.2d 320 (3d Cir. 1976); First National Bank of Ruson v. Miller, 329 So.2d 919 (2d Cir. 1976), writ denied, 333 So.2d 243 (1976); Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (2d Cir. 1975); Tichell v. Silmon, 304 So.2d 792 (2d Cir. 1974); Dunlap v. Chrysler Motors Corp., 299 So.2d 495 (4th Cir.) writ denied, 302 So.2d 38 (1974); Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (1st Cir. 1973); Gauche v. Ford Motor Company, 226 So.2d 198 (4th Cir. 1969) (on original hearing); Kiefer v. Bernie Dumas Buick Company, 210 So.2d 569 (4th Cir. 1968).

In Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (4th Cir. 1977), the Fourth Circuit recognized that article 2545 "does not provide that such a [bad faith] seller should get any credit for use or fruits" yet still allowed a set off of a buyer's finance charge against a manufacturer's use of the purchase price.
[2] Allowing the credit: Bergeron v. Mid-City Motors, Inc., 162 So.2d 835 (1st Cir. 1964), and cases cited in note 1, supra.

Disallowing the credit: Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973) (defendant did not seek reimbursement for buyer's use; implies that had defendant requested the credit he might have been entitled to it); Clark v. McBride Dodge, Inc., 289 So.2d 841 (4th Cir. 1974) (no evidence in the record on which to base a credit for use); de la Houssaye v. Star Chrysler, Inc., 284 So.2d 63 (4th Cir.), writ denied, 286 So.2d 662 (1973) (defendant did not seek reimbursement for buyer's use; implies that had defendant prayed for the credit he might have been entitled to it); R. O. Roy & Company, Inc., v. A & W Trailer Sales, 277 So.2d 204 (2d Cir. 1973) (on original hearing); Brown v. Mid-City Motors, Inc., 248 So.2d 27 (1st Cir. 1971); Hebert v. Claude Y. Woolfolk Corp., 176 So.2d 814 (3d Cir. 1965); Goff v. Dewey Oliver, Inc., 137 So.2d 393 (3d Cir. 1962).
No credit awarded, but no discussion of the issue: Falk v. Luke Motor Company, Inc., 237 La. 982, 112 So.2d 683 (1959); Reech v. Coco, 223 La. 346, 65 So.2d 790 (1953).
[3] In the following cases, for example, it was reasonable to allow a use credit: (1) credit of $60 per month for the purchaser's use of a mobile home, a reduced rental value due to the unpleasant living conditions caused by the defect, Weaver v. Fleetwood Homes of Mississippi, Inc., supra note 1; (2) $600 credit for use of an air conditioning unit for 3 summers which provided some, although not adequate, cooling, Peoples Fur. & G. v. Carson Hicks/Friedrichs Ref., Inc., supra note 1; (3) $1200 credit for 15,000 miles use of a pickup truck, Smith v. Max Thieme Chevrolet Company, Inc., supra note 1; (4) $2000 credit for 96,000 miles use of an automobile, Dunlap v. Chrysler Motors Corp., supra note 1; (5) $1680 credit on mobile home based upon 14,000 miles at $.12 per mile, rejecting $200 monthly rental value since " . . . the credit for use of a defective vehicle should not be in the same amount as that for a non-defective vehicle." Breaux v. Winnebago Industries, Inc., supra note 1, 282 So.2d at 769.

But see First National Bank of Ruston v. Miller, supra note 1, where the court credited the seller with the fair rental value attributable to a mobile home without defects, rejecting the purchasers' claim that the credit should be reduced since their enjoyment was seriously impaired by the defects.
[4] In the only other redhibition case found where interest ran from the date of judgment rather than from the date of judicial demand, or some other date, Boudreaux v. Mazda Motors of America, Inc., supra note 1, the purchaser was not only in possession of the thing, but continued to use it (18,000 miles on the car from the time of suit until trial).
[5] This is to be contrasted with an action in quantum meruit where the amount is not ascertainable until the date of judgment. See Sugar Field Oil Co., v. Carter, 214 La. 586, 38 So.2d 249 (1949); Brummett v. Hamel's Dairy, Inc., 324 So.2d 502 (2d Cir. 1975); Custom Builders & Supply, Inc., v. Revels, 310 So.2d 862 (3d Cir. 1975); Pittman & Matheny v. Davidge, 189 So.2d 706 (1st Cir.), writ denied, 249 La. 768, 191 So.2d 143, 249 La. 771, 191 So.2d 144 (1966).
[6] It might be argued that, since plaintiffs only prayed for interest from date of judicial demand, they should be so limited. See B. Segall Company, Inc., v. Trahan, 276 So.2d 340 (2d Cir. 1973), rev'd on other grounds, 290 So.2d 854 (1974). The appropriate response is the same as found in defendant's argument in brief on the issue of whether a credit for the buyer's use should be allowed absent a prayer for it. C.C.P. 862 provides that a final judgment shall grant the relief a party is entitled to, even if he has not demanded such relief in his pleadings.