COLE, Judge.
The issue in this appeal is whether or not appellee, Ronald Adams, Contractor, Inc., (Adams) is entitled to additional compensation for work performed under a state contract. The trial court concluded it was. We affirm.
On October 3, 1978, Adams contracted with the State to perform certain site work on a construction project. His obligation involved both excavation work and the building of an embankment in place. The State’s proposal estimated the site work would involve the excavation of 10,204 cubic yards of dirt, while the building of the embankment would require 69,367 cubic yards of dirt. The contract provided the State was to pay a certain unit price for each cubic yard of dirt excavated and for each cubic yard used in the embankment.
Although the construction was completed in accordance with the original plans and specifications, the quantities of dirt involved in both the excavation work and the embankment in place were substantially less than the original proposals. This under-run (the difference between the proposed and actual quantities) was due to computation errors by the State’s consultant engineers. The under-run amounted to a 79.90% reduction from the proposed quantities in the excavation work and a 31.58% reduction in the embankment in place.
Adams contends this under-run constitutes an alteration which entitles it under the contract to be paid at a higher unit price than originally provided.
Section 90-03 of the contract provides for instances where there is a difference between the accepted quantities and the proposed quantities of work to be per *780 formed. Under this section the contractor is to be paid at the original contract price except as otherwise provided in Section 40 of the contract, the pertinent part of which is Section 40-02:
“40-02 ALTERATION OF WORK AND QUANTITIES. The owner reserves and shall have the right to make such alterations in the work as may be necessary or desirable to complete the work originally intended in an acceptable manner. Unless otherwise specified herein, the engineer shall be and is hereby authorized to make such alterations in the work as may increase or decrease the originally awarded contract quantities, provided that the aggregate of such alterations does not change the total contract cost or the total cost of any major contract item by more than 25 percent (total cost being based on the unit prices and estimated quantities in the awarded contract). Alterations which do not exceed the 25 percent limitation shall not invalidate the contract nor release the surety, and the contractor agrees to accept payment for such alterations as if the altered work had been a part of the original contract. These alterations which are for work within the general scope of the contract shall be covered by ‘Change Orders’ issued by the engineer. Change orders for altered work shall include extensions of contract time where, in the engineer’s opinion, such extensions are commensurate with the amount and difficulty of added work.
“Should the aggregate amount of altered work exceed the 25 percent limitation hereinbefore specified, such excess altered work shall be covered by supplemental agreement. If the owner and the contractor are unable to agree on a united adjustment for any contract item that requires a supplemental agreement, the owner reserves the right to terminate the contract with respect to the item and make other arrangements for its completion.”
The State maintains there has been no alteration in quantities within the meaning of Section 40-02 so as to entitle Adams to additional compensation. We disagree. Section 40-02 refers to alterations in the work to be performed under the contract, which we interpret to have a broader meaning than merely alterations in the plans or design as argued by the State. Technical terms in contracts are to be interpreted according to their accepted meaning within the field or industry in which they are used. See La.Civ.Code art. 1947. Two of plaintiff’s witnesses were accepted by the trial court as experts in construction terminology. Both considered the under-run occurring in the present case to constitute an alteration in the work. Although the chief engineer for the Department of Transportation disagreed, we note the State did not tender or qualify him as an expert in construction terminology. In any event, we find no error in the trial court’s conclusion that an alteration within the meaning of Section 40-02 occurred in the instant case.
In the alternative, the State argues Adams is entitled to additional compensation for only the portion of the alterations which exceed the 25% limitation provided in Section 40-02. They maintain under this argument Adams is entitled to additional compensation for the embankment in place for only 6.58% of the original proposed quantities, i.e., 31.58% reduction minus 25%. We reject this argument, agreeing instead with the trial court’s conclusion that once alterations in work exceed the 25% limitation provided in Section 40-02, a supplemental agreement must be made with respect to the aggregate. Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. Lambert v. Maryland Cas. Co., 418 So.2d 553 (La.1982), rehearing denied 1982. Section 40-02 provides that “alterations which do not exceed the 25 percent limitation shall not invalidate the contract...”, implying that alterations which do exceed this limitation may invalidate it. The State in fact has the option of terminating the contract with respect to items involving such alterations if a supplemental agree *781 ment with the contractor cannot be reached.
These provisions were obviously made in recognition that an over-run or under-run exceeding 25 percent of the originally awarded quantities constitutes a substantial change in the contract and the basis upon which the parties entered into it.
The evidence establishes this was true in the present case. Adams indicated its unit price bid would have been much higher if it had known the actual quantities involved. The expert testimony clearly established a contractor’s cost per unit increases as the quantity of units decreases; the greater the reduction the sharper the increase in cost. Additionally, Adams was entitled under the contract to use the dirt it excavated from the construction site to build the embankment. Since the quantities actually excavated were substantially less than originally proposed, Adams had to purchase more dirt than anticipated for use in the embankment.
In view of these considerations and reading the contract as a whole, we do not believe it was the intent of the parties to give the State the option of terminating the contract, without giving the contractor the right to negotiate a new unit price for the total amount of alterations. In the very least, it must be said the phrase “such excess altered work,” found in Section 40-02, is not definitive as regards this issue. The meaning being unclear and ambiguous, it must be interpreted against the entity confecting the contract, i.e., the State. Accordingly, we affirm the trial court’s interpretation of this contract and the award made by it.
Adams filed an answer to the State’s appeal in which it requests amendment of the trial court’s judgment to allow legal interest from September 24, 1980 rather than from the date of judicial demand, as awarded.
Unless otherwise stipulated, contractual debts bear interest from the date upon which they become due. La.Civ.Code art. 1938. Adams claims the State’s debt for additional compensation became due on September 24, 1980, i.e., the date upon which the actual quantities of dirt involved in the performance of this contract were determined. However, while the quantities involved may have been determined on that date, the rate of compensation due for them was not. Despite a stipulation that Adams requested additional compensation, no evidence was presented to show a bill in a definite amount was ever presented to the State. Accordingly, Adams has not established interest should have commenced on September 24, 1980, since the amount of the debt was not ascertainable at that time. See Alexander v. Burroughs Corp. 359 So.2d 607 (La.1978); Binswanger Glass Company v. Taylor, 284 So.2d 367 (La.App. 2d Cir.1973). Therefore, we affirm the award of interest made by the trial court.
For the above reasons, the judgment of the trial court is affirmed in its entirety. The state is assessed costs of $868.25. La. R.S. 13:5112(A).
AFFIRMED.