LABORDE, Judge.
Plaintiff, Clet J. Castille, Jr., and defendant, 3-D Chemicals, Inc., entered into a construction contract for the erection of grain storage bins on plaintiffs property. Plaintiff asserts that defendant breached the contract by unilaterally substituting certain components for items specified in the contract. Defendant maintains that plaintiff agreed to the substitutions or, in the alternative, that plaintiff accepted the substitutes and therefore waived his right to complain. The trial court found that plaintiff and defendant contracted to use a specific brand of equipment; that no substitution was agreed upon; and that no waiver occurred. The trial court concluded that the defendant’s breach of the contract caused plaintiff $7,850.01 in damages. We can find no manifest error regarding the breach of contract issue; however, the damage award is not supported by the evidence. We therefore amend and affirm as amended.
Plaintiff decided to store grain on his property. He researched various farm facilities and determined that Long Manufacturing Company could provide the best *1004 product. With this in mind, he contacted David Degeyter — president, manager, and 100% stock owner of 3-D Chemical", Inc. Mr. Degeyter represented various grain storage manufacturers, including Long, Tri-Con, and Hunter. Mr. Degeyter worked up a bid proposal specifying the use of Long equipment. The cost of the project, using the Long products, amounted to $123,551.00. After the proposal was made, 3-D Chemicals, Inc. became a dealer for Modem Farm Systems.
Plaintiff was willing to pay that amount for Long equipment. He presented the proposal to Charles Ray Rodrigue of the Farmers Home Administration (FHA) in order to acquire financing for the project. Plaintiffs loan application was approved by the FHA and a contract between plaintiff and defendant was drafted. The FHA requires a construction bond from the contractors; however, 3-D Chemicals, Inc. could not be bonded. David Degeyter arranged for his brother’s company, Steel Building Construction Company, Inc. (Steel Building), to be the nominal contractor. A new contract was drafted which named Steel Building as the contractor. This contract does not specify the use of Long equipment. Steel Building subsequently acquired a construction bond in the amount of $123,551.00 from Commercial Union Insurance Company.[1] At this point, the testimony diverges widely.
Plaintiff asserts that the contract contemplated the exclusive use of Long equipment as specified in the first contract. Plaintiff testified that at no time did he authorize the substitution of less expensive components. While the construction process lasted almost three (3) months, plaintiff avers that he did not know that the storage bins were actually Modem Farm Systems bins. Plaintiff visited the site daily. Plaintiff asserts that he did not realize that the bins were made by Modern Farm Systems until he saw the manufacturer’s sign on the tank just before completion of the project. By that time, the facility was necessary to hold plaintiff’s harvest; so he accepted the work as satisfactory and began using the bins.
The FHA agent, Mr. Rodrigue, also inspected the site, three (3) times, and found the work satisfactorily completed. Mr. Ro-drigue was not certain when he realized that the components were not 100% Long equipment. The FHA, according to Mr. Rodrigue, was not concerned with the substitutions.
Defendant asserts that plaintiff agreed to substitute certain Long components for less expensive components in order to reduce the contract price. Mr. Degeyter testified that his original estimate, using Long equipment exclusively, amounted to over $129,000.00. By using other brands, the contract price was reduced to the $123,-551.00 figure which plaintiff agreed to pay.
Mr. Degeyter’s contention was corroborated by the local representative of Modem Farm Systems, Wilson J. Baronet. Mr. Baronet testified that 3-D Chemicals, Inc. was made a dealer for the Modem Farm Systems line of grain storage equipment. Mr. Degeyter mentioned that he had just worked-up a bid for plaintiff using Long equipment. Mr. Baronet testified that he and Mr. Degeyter visited plaintiff and persuaded him to use some components from the Modern Farm Systems line. Plaintiff admits that he met Mr. Baronet, but denies that he knew why Mr. Baronet was at the construction site. Plaintiff maintains that he thought Mr. Baronet was just another sub-contractor.
Simply put, the trial judge believed plaintiff. In his reasons for judgment, the judge noted that he was convinced “that the Plaintiff in this matter had negotiated for and had wanted to have some grain storage facilities built on his property using products manufactured by Long Manufacturing Company.” While a contrary conclusion could have been reached, the trial court’s finding is reasonable and is supported by the evidence. We accept it.
*1005 We also accept the trial court’s finding that plaintiff did not know about the substitution of products until the completion of the project. Again, the trial court believed plaintiff. By the time plaintiff accepted the work as satisfactory, harvest time was upon him and he needed the storage facility. The trial court correctly identified plaintiffs dilemma in “accepting” the unsatisfactory work. We find no error in the trial court’s finding that plaintiff was not estopped from complaining about deviations or variations from the plans after the project was completed. The acceptance in this case does not bar recovery for breach of contract. Cf. State v. Wilco Construction Company, Inc., 393 So.2d 885, 897 (La.App. 4th Cir.), modified, 398 So.2d 1150 (La.App. 4th Cir.1981).
The trial judge found that plaintiff did prove injury, but noted the difficulty he had in finding an acceptable method of determining damages. The trial court determined that plaintiff was damaged in two ways: (1) in being charged for the more expensive Long bin, but receiving the less expensive Modern Farm Systems bin; and (2) in suffering from diminished storage capacity as a result of the substitution.
The trial court clearly erred in awarding plaintiff damages for reduced storage capacity. Not only was the record devoid of evidence of comparative capacity, but plaintiff, in fact, expressly abandoned his claim for the alleged shortage. The trial court’s calculation of damages in this regard was entirely speculative, unsupportable, and unwarranted. The award for lost capacity, $2,071.68, must be reduced to zero.
The record supports the trial court’s finding that defendant benefited from substituting Modern Farm System bins for Long bins in the amount of $3,467.00. The trial court reasoned that the unearned benefit to defendant resulted in a detriment to plaintiff. Under the circumstances of this case, we find no manifest error in calculating damages in this manner. However, the trial court added $2,311.32 to the net savings of defendant ($3,467.00) because it was found that defendant would have “retailed” the same items at $5,778.32 ($3,467.00 -=- .6 = $5,778.32). We find no basis for factoring defendant’s net saving of $3,467.00 by .6. The $5,778.32 award is reduced to $3,467.00.
Finally, defendant asserts that the trial court erred in awarding interest on the damages from the date of judicial demand as opposed to the date of judgment. Defendant cites Roques v. Alfonso, 399 So.2d 1294 (La.App. 4th Cir.1981), for the proposition that an unliquidated claim is “due” from the time it becomes ascertainable. See La.C.C. art. 1938.
The trial court correctly awarded interest from the date of judicial demand in this breach of contract case. See Alexander v. Burroughs Corporation, 359 So.2d 607, 613 (La.1978); Land and Offshore Co. v. Martin, 469 So.2d 1177, 1186 (La.App. 3d Cir.1985).
For the above and foregoing reasons, the judgment of the trial court finding defendant, 3-D Chemicals, Inc., in breach of its contract with plaintiff, Clet J. Castille, Jr., is affirmed. The award of damages is amended and reduced to $3,467.00 with interest from the date of judicial demand. Costs of this appeal are taxed to defendant, 3-D Chemicals, Inc.
AFFIRMED AS AMENDED.

. Steel Building and Commercial Union were added as defendants by supplemental petition.
The trial court ignored these defendants in its judgment; therefore, they are deemed dismissed from suit. Plaintiff does not appeal the dismissals.