32 So.3d 310 (2010)
Brenda VERGES
v.
DIMENSION DEVELOPMENT CO., INC., Baronne Hotel Investors, L.L.C. and Woodrow Wilson Construction Co., Inc.
No. 2008-CA-1336.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 2010.
*311 Wayne J. Jablonowski, Law Office of Wayne J. Jablonowski, APLC, Slidell, LA, August J. Hand, Covington, LA, for Plaintiff/Appellant.
R. Ray Orrill, Jr., Denise M. Ledet, Orrill, Cordell & Beary, LLC, New Orleans, LA, for Intervenor/Appellee (Orrill, Cordell & Beary, L.L.C.)
(Court composed of Judge JAMES F. McKAY, III, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge PAUL A. BONIN).
MICHAEL E. KIRBY, Judge.
Plaintiff, Brenda Kraft Verges, appeals the trial court judgment awarding fees to her former attorneys, Orrill, Cordell & Beary, LLC ("OCB"), in the amount of $112,850.00 plus legal interest from the date of demand and all costs. For reasons that follow, we amend the trial court judgment *312 (1) to reduce the amount of fees awarded to OCB, and (2) to change the award of interest from date of judicial demand to date of the trial court judgment.
The issue in this case is the amount of fees owed by plaintiff to OCB. Plaintiff filed suit alleging that immovable property owned by her was damaged as a result of construction of an adjacent hotel. She was represented by OCB from September 2001 until the firm withdrew from the case in April 2003. Plaintiff's then-husband, Wade Verges, hired OCB through a power of attorney from plaintiff. Mr. Verges was not a party to plaintiff's suit. Shortly after OCB withdrew from the case, plaintiff retained A.J. Hand and Wayne Jablonowski from the firm of Hulse & Wanek. Mr. Jablonowski continued to represent plaintiff after he left Hulse & Wanek. Plaintiff's property damage claim settled in 2007 for $440,000.00.
In June 2003, shortly after withdrawing from the case, OCB filed a petition of intervention for attorney's fees. Attached to the petition was the contract between OCB, plaintiff and Mr. Verges. The contract stated that the fee owed to OCB would be 30% of any settlement, judgment, collection or other recovery received by plaintiff or her ex-husband in the underlying litigation entitled "Brenda Verges v. Dimension Development Co., Inc." Trial on the intervention was held after the case settled. Testimony was offered by plaintiff, plaintiff's now ex-husband, Wade Verges, attorney Christopher Beary of OCB, and several other defense attorneys who were involved in plaintiff's lawsuit. Much of the testimony centered on the complexity of the case and the amount of work performed by Mr. Beary before his withdrawal from the case.
Following trial, the trial court awarded OCB attorney's fees in the amount of $112,850.00 plus legal interest from the date of judicial demand and all costs. The trial court stated in reasons for judgment that OCB proved the hourly value of their services to be $112,850.00, which the court found to be fair compensation to OCB. In arriving at this figure, the trial court found that the value of plaintiff's claim was proven to be at its highest immediately prior to mediation in April 2003. The court found that plaintiff increased her demand at the mediation against the advice of OCB, and sought to obtain a net settlement of $650,000.00 and retain ownership of her building. The court accepted Mr. Beary's testimony that he counseled plaintiff not to take this position, and withdrew from the case when she refused to accept that advice. Although noting that OCB had only obtained an official settlement offer of $175,000.00, the court found that $440,000.00 was an accurate valuation of plaintiff's claim given the fact that plaintiff's own experts testified that her claim was not as substantial as she may have believed.
The trial court found that the standard set forth in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), does not apply in this case. We agree. The Saucier case involved a fee dispute between plaintiff's former and successor attorneys, all of whom were hired on a contingency fee basis. Here, we are faced with a situation in which plaintiff's former attorneys were representing her on a contingency fee basis, whereas her successor attorneys represented her on an hourly rate basis. Although OCB initially handled plaintiff's case on an hourly rate basis, OCB agreed to accept the case on a 30% contingency fee basis in September 2002.[1]
*313 The trial court found two Third Circuit cases to be persuasive in this case: Wright v. Tschirn, XXXX-XXXX (La.App. 3 Cir. 6/9/04), 875 So.2d 1037 and Lytle v. Commercial Insurance Company of Newark, New Jersey, 285 So.2d 289 (La.App. 3 Cir. 1973). Both cases involved attorneys who were awarded fees for their work performed on behalf of clients with whom they terminated their representation prior to the conclusion of their cases. While this Court is not bound by decisions of other circuits, we note that these cases are distinguishable in that there were no allegations in either of those cases that the attorney's termination of his representation of his client had any adverse effect on his client's interests. In the instant case, OCB terminated its representation of plaintiff in the middle of her case, and plaintiff has alleged that this action prejudiced her because she had to quickly hire new counsel in the middle of her litigation and the lawyers who agreed to take her case charged on an hourly rate basis for their services.
Plaintiff is not arguing that OCB's withdrawal from the case should result in no award of attorney's fees to that firm. However, she argues that the amount awarded is excessive. We agree. There were certain extra expenses that plaintiff incurred as a result of OCB's withdrawal. A substantial portion of the fees paid to her successor attorneys represented review of work already performed by OCB. Additionally, the successor law firm hired by plaintiff following OCB's withdrawal charged an hourly rate of $175.00, a higher rate than that initially charged by OCB prior to the contingency fee arrangement.
OCB argues that it withdrew from representing plaintiff in the middle of the case because plaintiff was being unreasonable in her settlement demands. But that was not the reason OCB gave to plaintiff in its letter of April 16, 2003 notifying her of the firm's withdrawal from her case. The letter, signed by R. Ray Orrill, Jr. and W. Christopher Beary, set forth their opinions as to the value of plaintiff's claim and how they differed from plaintiff's expectations. There is nothing in the letter suggesting that OCB was withdrawing from the case because plaintiff was an unreasonably difficult client. A key paragraph in the letter states:
Consequently, it is time that we make another business decision to withdraw from your representation at this time. We cannot afford to put any more time into this case because it would, in essence, mean that we would be working for free and we have too many other irons in the fire to do what is entailed to get this matter ready for trial and to try it, under the circumstances.
Their letter concluded with the sentence, "We are sorry that we cannot complete this case for you but, as you can readily understand, the numbers just don't work for us."
The only evidence to support OCB's claim that plaintiff was being unreasonable in her settlement demands was the self-serving testimony of Mr. Beary at the trial on the intervention. Mr. Orrill and Mr. Beary spelled out their reasons for OCB's withdrawal from plaintiff's case in its letter of April 16, 2003, and did not mention any unreasonableness on the part of plaintiff. The letter made clear that OCB was withdrawing from its representation *314 of plaintiff because the case no longer seemed profitable to them.
A lawyer may withdraw from representing a client if the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client. State Bar Articles of Incorporation, Art. 16, Rules of Professional Conduct, Rule 1.16(b)(6). We find that OCB presented sufficient evidence at trial to show that their continued representation of plaintiff would have resulted in an unreasonable financial burden on the firm. Therefore, their withdrawal from the case was not wrongful.
However, OCB's decision to withdraw from this case, while arguably in the firm's best interests, nonetheless had a material adverse effect on plaintiff. We note that Rule 1.16(b)(1) of the Rules of Professional Conduct states that a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client. To pursue her claim to its conclusion, plaintiff was forced to retain new counsel, for which she was charged an hourly rate. This resulted in the duplication of some of the work already performed in that plaintiff's successor attorneys had to review all of OCB's work in order to familiarize themselves with plaintiff's case, in addition to doing the remainder of the work involved up to the settlement of the case. The review of OCB's work was an expense that plaintiff would not have incurred but for OCB's withdrawal midway through the case. Additionally, the hourly rate charged by plaintiff's successor counsel was $25.00 higher than the hourly rate charged by OCB before the firm agreed to take the case on a contingency fee arrangement.
At trial, Mr. Beary testified that he did not maintain contemporaneous time records in this matter once the firm agreed to a contingency fee arrangement. He offered his estimate of the hours of work performed and the fees earned by the firm based on the $150.00 hourly rate that the firm initially charged plaintiff. A written estimate of hours of work performed was introduced into evidence, and included a total amount of $112,850.00 in fees earned on an hourly rate basis. This estimate included $7,100.00 in fees previously waived by the firm in consideration for accepting the case on a contingency fee basis.
There is no mention in the written estimate of the $5,000.00 in fees previously paid to OCB by plaintiff. However, Mr. Beary testified that his estimate of fees was for the work performed by OCB during the period that the contingency fee arrangement was in effect, plus $7,100.00, which represented the approximate amount of fees waived by the firm in consideration for entering into the contingency fee arrangement. Based on this testimony, we conclude that the estimate of fees did not include the $5,000.00 payment previously made by plaintiff.
We have found an error in the calculations provided by OCB in their written estimate of fees earned. In item #4 of OCB exhibit # 15, OCB estimated that the firm spent 306 hours on depositions. At an hourly rate of $150.00, the amount claimed for depositions should have been $45,900.00, not $49,500.00 as stated in exhibit #15. This transposition error resulted in an increase of $3,600.00 in OCB's estimate. The corrected total of OCB's estimate is $109,250.00.
The trial court is vested with great discretion in arriving at an award of attorney's fees, and the exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Filson v. Windsor Court Hotel, *315 XXXX-XXXX, p. 6 (La.App. 4 Cir. 7/23/08), 990 So.2d 63, 67. The trial court accepted the estimates offered by OCB, and awarded OCB $112,850.00 in fees representing the hourly value of their services at a billing rate of $150.00 per hour. With the exception of the $3,600.00 transposition error in OCB's estimate, we find no abuse of the trial court's discretion in its calculation of the hourly value of OCB's services.
However, we find that the court abused its discretion in not deducting an amount representing fees charged by the successor attorneys in reviewing OCB's work in order to familiarize themselves with the case. The billing records of the successor attorneys were introduced into evidence without any testimony. Plaintiff has paid $54,356.12 to her successor attorneys. Our review of their billing records establishes that $15,288.40 of that amount represents review of work performed by OCB. OCB's withdrawal in the middle of the case caused this review to be necessary. Plaintiff should not have to pay twice for the same work. We find that any additional expense incurred by plaintiff as a result of OCB's withdrawal should have been deducted from the fees awarded to OCB.
We find the trial court also abused its discretion in not deducting an amount equal to the extra cost plaintiff incurred due to the fact that her successor attorneys billed at an hourly rate of $175.00, rather than the $150.00 hourly rate arrangement she had with OCB prior to the agreement to switch to a contingency fee arrangement. After subtracting the hours earned by the successor attorneys for this duplicative work, 215.85 hours billed at the $175.00 hourly rate remain.[2] This resulted in an extra cost to plaintiff of $5,396.25.
Accordingly, we amend the trial court's $112,850.00 award of attorney's fees by deducting the following amounts: (1) $15,288.40 representing charges by the successor attorneys for review of work performed by OCB, (2) $5,396.25 representing the extra amount plaintiff was required to pay her successor attorneys due to their higher hourly rate of $175.00 and (3) $3,600.00 representing the transposition error in OCB's estimate of fees earned. The resulting total is $88,565.35.
Plaintiff also argues that the trial court erred in awarding interest on the award of attorney's fees to OCB. We find that an award of interest is warranted. However, we find that the trial court erred in awarding interest from date of judicial demand.
Shortly after the plaintiff's case settled in 2007, OCB requested that plaintiff deposit $154,933.32 into the registry of the court for purposes of OCB's June 2003 intervention for attorney's fees. By order dated October 11, 2007, the trial court granted plaintiff's motion to deposit these funds into the registry of the court. If the amount of attorney's fees owed to OCB had been ascertainable when the intervention was filed, then OCB would be entitled to interest from the date of judicial demand until the date that these funds were placed in the registry of the court. See, Reeves v. Winborn, 153 So.2d 531 (La.App. 1 Cir.1963). However, in this case, the amount of attorney's fees due to OCB was not ascertainable until awarded by the trial court. Therefore, OCB is only entitled to interest on the award of attorney's fees from the date of the judgment, and not *316 from the date of judicial demand. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978).
For the reasons stated above, we amend the trial court judgment to reduce the award of attorney's fees to OCB from $112,850.00 to $88,565.35. The judgment is further amended to award interest only from the date of the trial court judgment, June 9, 2008. In all other respects, the trial court judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
MURRAY, J. dissents in part and assigns reasons.
MURRAY, J., dissents in part and assigns reasons.
I agree with the majority with regard to the amendment of the judgment relative to legal interest and the conclusion that the trial court abused its great discretion in its award of $112,850 attorney fees to OCB in connection with its representation of Brenda Verges. However, for the following reasons, I disagree with the amount of fees to which it determines OCB is entitled.
Brenda Verges contracted with OCB to represent her on an hourly basis beginning in September 2001. According to the testimony of Christopher Beary, Ms. Verges was struggling to make the hourly payments. She did not pay anything on the invoices for September, October, November, and December of 2001, or January and February of 2002 until March 2, 2002; at that time she made a partial payment of $5,000 leaving an unpaid balance of $2,348.78.[1] She was billed hourly for the months of March, April, June, July, and August of 2002, but as of September 5, 2002, she had not been able to pay anything towards those billings. On that date Ms. Verges and OCB converted their arrangement for the firm's representation from hourly billings to a contingency fee arrangement. They agreed that the firm would be paid a 30% contingency fee on the amount recovered, excluding any portion of the recovery attributable to the sale of the property at issue in the litigation. OCB would waive the unpaid hourly billings totaling $7,162.50. Ms. Verges was to pay all costs as they were incurred in the future.
The firm continued to represent Ms. Verges for another seven months until it notified her that it was terminating its representation on April 16, 2003, the day following an unsuccessful mediation. The firm advised Ms. Verges that the evidence had developed such that the value of her claim realistically had been reduced by more than 30% of that originally placed on the case. As a consequence of the reduced value of the claim and the firm's appreciation that Ms. Verges was unwilling to adjust her expectations, OCB was making a business decision to withdraw from her representation at that time as it felt that the fee potential of the case would not justify the time necessary to prepare the matter for trial. As OCB explained, based on the circumstances, the firm, essentially, would be working for free; as it explained, it had "too many other irons in the fire to do what is entailed to get this matter ready for trial and try it ..."
In the letter of withdrawal, OCB opined that Ms. Verges "should not have any trouble obtaining other counsel to take over the case" as the bulk of the work had been done by it. It advised Ms. Verges that the firm would file its contract with the court and request an apportionment of fees "from any subsequent settlement or judgment between us and your new counsel; *317 consequently, there will be no additional charge to you."
Despite having withdrawn from its representation, OCB agreed to continue to work through the negotiation process until new counsel was engaged in July 2003.[2] The case ultimately was settled for $440,000, which did not include the sale of the property.
It is apparent that, at the time it withdrew, OCB anticipated that Ms. Verges would engage another attorney on a contingency fee basis. Had this occurred, one contingency fee would have been paid by Ms. Verges, "the amount of the fee to be determined according to the highest ethical percentage to which the client contractually agreed in any of the contingency fee contracts that he executed." Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La.1978). That fee would then have been apportioned between OCB and the successor firm "according to the respective services and contributions of the attorneys for the work performed and other relevant factors." Id. Assuming that the highest ethical percentage to which Ms. Verges agreed was 30%, the attorney fee she would have owed on the $440,000 recovered would have been $132,000.
Unfortunately, Hulse and Wanek (H & W), the successor firm hired by Ms. Verges was not willing to take the case on a contingency basis. Ms. Verges agreed to pay H & W at the rate of $175.00 per hour. According to the detailed billing statements in evidence, the total number of hours expended by H & W from July of 2003 through July of 2007 was 315; the total fee paid to H & W was $54,356.12.
As the majority points out, unlike Saucier, this case does not involve a fee dispute between two firms, each of whom represented the plaintiff on a contingency basis. However, it does not follow that the principles articulated in Saucier cannot provide guidance for addressing the particular situation presented here. In Saucier the court sought to ensure that a client would not be deprived of the right to discharge the attorney for fear of incurring multiple fees, while recognizing the discharged attorney's right to receive fair compensation for work performed before being discharged. In essence, the Court was concerned that all parties be treated fairly. That concern applies equally to the situation where, as here, an attorney withdraws from its contingency fee representation, and the successor attorney undertakes the representation on an hourly basis. The award of attorney's fees to OCB by the trial court herein does not dispel that concern as it does not appear to be fair to all parties.
OCB put on evidence of the extent of the work done by it during the seventeen months it represented Ms. Verges. Once OCB converted its representation from hourly to a contingency fee basis, it no longer kept detailed time records. Mr. Beary testified that the compilation of time expended by OCB was his "best estimate" looking back through the case file on "a per category basis, trying to identify how many hours would have been spent." The total hours estimated to have been spent by OCB during its representation of Ms. Verges during the period it represented her on a contingency basis was 681. OCB represented the value of that work, based on $150 per hour, the hourly fee at which they initially contracted with Ms. Verges, to be $105,750. Adding to that the $7,100 unpaid balance that was waived upon entering *318 into the contingency fee arrangement, OCB valued its services to Ms. Verges to be $112,850. The trial court found that OCB has "proved the hourly value of their services to be $112,850," and found this amount to be fair compensation to OCB for its services.
The majority recognizes a discrepancy in OCB's itemization; it finds that the corrected total of the claimed value of the OCB services is $109,250.00, a $3,600 discrepancy. The majority further finds that the trial court failed to take into account the adverse effect of OCB's withdrawal from its representation of Ms. Verges. The majority identifies those consequences as the cost of H & W's review and necessary duplication of OCB work ($15,288.40) plus the differential between the $25 per hour differential ($5,396.25) between the OCB and H & W hourly rates. The majority, therefore, reduces the award of attorney fees to OCB to $88,565.35.
Were the trial court's award to stand the total fees paid by Ms. Verges to resolve this claim would be $167,206.12, or $35,206.12 more than the highest fee she would have paid to OCB had it not withdrawn from its representation. Under the majority's amended award the total attorney fees paid by Ms. Verges is $88,565.35 or $10,921.47 more than the fee that Ms. Verges would have owed under the OCB contingency arrangement.
OCB and Ms. Verges entered into a 30% contingency fee contract. Based on the recovery, Ms. Verges would have expected to pay $132,000 for legal services. She was assured by OCB that there would be an "apportionment" of fees between it the successor attorney so that she would incur "no additional charge."
When OCB agreed to represent Ms. Verges for a 30% contingency fee, it anticipated that its fees, if it were successful, would be capped at that level. At that point, it agreed to take the risk of non-recovery. When it withdrew from its representation of Ms. Verges she was put in the position of having to obtain representation on an hourly basis. Her exposure at that point was not limited to a percentage of her recovery. In fact, she faced exposure for more fees, regardless of whether she was successful. Although she eventually paid her successor lawyer $54,356.12, she potentially would have been responsible for considerably more fees had the matter required trial and appeal.
Although OCB was free to make a "business" decision that it could not afford to continue its representation, it should not now receive a windfall because it withdrew. I, therefore, would cap Ms. Verges' attorneys fee in this matter at $132,000, the maximum amount to which OCB would have been entitled had it seen the case through to completion. From that I would deduct $54,356.12 the amount that Ms. Verges was required to pay the successor firm to see the case through, and reduce the amount of fees awarded to OCB to $77,643.88.
It is apparent that OCB did a considerable amount of work in preparing the claim for mediation, and continued to negotiate the matter for Ms. Verges even after it withdrew. Although the hourly "best estimate" of 681 additional hours expended in seven months seems generous, it is evident that the work done by OCB was utilized by the successor firm, and contributed to the successful resolution of the claim. Had both OCB and H & W been representing Ms. Verges on a 30% contingency basis there is no doubt, based on the relevant factors in this case, that OCB would have been entitled to a larger portion of the contingency fee than H & W. An award of $77,643.88 is an equitable award to OCB, recognizing its contribution to the successful resolution of the claim, but not *319 rewarding it beyond its bargained for fee for having made a "business decision" to withdraw before completion of the case.
NOTES
[1] According to Mr. Beary, plaintiff and Mr. Verges had only partially paid the firm's invoices during the time that plaintiff's case was being handled on an hourly rate basis. As part of the agreement to change the fee arrangement from an hourly rate to a 30% contingency fee, OCB agreed to waive the $7,162.50 unpaid balance owed by plaintiff and Mr. Verges as of September 5, 2002.
[2] We note that when Mr. Jablonowski continued to represent plaintiff after leaving the firm of Hulse and Wanek, he charged an hourly rate of $150.00. Because this is the same hourly rate charged by OCB prior to the contingency fee arrangement, we have not included the hours charged separately by Mr. Jablonowski in this calculation.
[1] According to Mr. Beary, this amount was "paid up" at some point in time.
[2] Although Ms. Verges obtained her files from OCB in April 2003, H & W did not do any work on the case until July 2003.